Turner P. Smith (TS 8052)
Michael R. Graif (MG 4795)
Curtis, Mallet-Prevost, Colt & Mosle LLP
101 Park Avenue
New York, New York 10178-0061
Telephone: (212) 696-6000
Facsimile: (212) 697-1559

11 CIV 7211

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ X

HUTZLER MANUFACTURING COMPANY, INC.

                       Plaintiff,

              -against-

BRADSHAW INTERNATIONAL, INC.,

                       Defendant.

------------------------------------------------------------------------ X

**COMPLAINT**

11 Civ. ___

        Plaintiff Hutzler Manufacturing Company, Inc. ("Hutzler"), for its complaint against defendant Bradshaw International, Inc. ("Bradshaw") alleges as follows:

### NATURE OF THE ACTION

        1.    This is a civil action for injunctive relief and damages arising under the Acts of Congress relating to patents, 35 U.S.C. § 1 *et seq.*, and for common law tortious interference and unfair competition under New York law.

### THE PARTIES

        2.    Plaintiff Hutzler is a corporation organized and existing under the laws of the State of New York. Hutzler does business in this judicial district.

3. On information and belief, defendant Bradshaw is a corporation organized and existing under the laws of the State of Delaware with its principal place of business at 9409 Buffalo Avenue, Rancho Cucamonga, California 91730-6012.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 1338, and 1367.

5. This Court has personal jurisdiction over defendant because defendant continuously and systematically conducts business within the State of New York.

6. Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b), (c), (d), and 1400(b), because on information and belief, defendant resides and/or has engaged in the complained-of acts of patent infringement in this judicial district.

## FACTUAL BACKGROUND

### Hutzler's Patents

7. Hutzler, a manufacturer and distributor of housewares, has been family owned and operated since 1938. In the 1980s, Hutzler began manufacturing unique baking gadgets.

8. Over the past decade, the housewares industry has seen a major shift in structure. There has been tremendous consolidation among retailers and many of the smaller players have gone out of business. Many of Hutzler's customers have also become its "competitors" in the direct importation of products. While Hutzler was one of the first in the industry to secure the sourcing of products overseas, today many of Hutzler's customers have the same ability due to globalization. This has caused Hutzler to take strategic steps and make targeted investments to move up the innovation ladder in order to compete. In particular, Hutzler has had to develop new and unique products itself (or innovate in the use of packaging), instead of

relying on its manufacturing partners or selling "knock-off" products, as many importers now do. Hutzler now focuses on designing products that are unique in features and/or design, and it has taken steps to protect these innovations through the use of utility and design patents. Nearly all of the company's revenue growth comes from new products.

9. In 2005, Hutzler introduced a line of products used for storing and preserving various types of produce. This line of plastic products, some of which resemble the types of produce they are designed to store and keep fresh, is called the "Food Saver Line." Two products in the Food Saver Line – the "Onion Saver" and the "Garlic Saver" – are covered by U.S. patents owned by Hutzler.

10. Hutzler's Food Saver Line has quickly become the company's most popular product line. Sales of products in the Food Saver Line represent approximately 63 percent of Hutzler's sales and, specifically, sales of the Onion Saver and the Garlic Saver account for 27 percent of the company's sales.

### The Onion Saver Patent

11. On May 4, 2006, Hutzler filed a patent application with the United States Patent and Trademark Office (the "PTO") in connection with a claim for the "ornamental design for an onion container." On March 13, 2007, the PTO duly and legally issued U.S. Patent No. D538,114 ("the '114 Patent"), showing and describing the "ornamental design for an onion container," with Hutzler as the assignee from the inventor. Attached hereto as Exhibit 1 is a true and correct copy of the '114 Patent. Hutzler is the owner of the entire right, title, and interest in and to the '114 Patent. The '114 Patent is in full force and effect.

12. Pursuant to 35 U.S.C. § 287, since the issue date of the '114 Patent, Hutzler has marked each onion container it has designed, manufactured, and sold (under the name "Onion

-3-

Saver") in accordance with the '114 Patent with the full patent number for the '114 Patent. Prior to the patent issue date, such products were marked as "patent pending."

### The Garlic Saver Patent

13. On August 14, 2007, Hutzler filed a patent application with the PTO in connection with a claim for the "ornamental design for a container" intended to hold garlic. On May 19, 2009, the PTO issued U.S. Patent No. D592,463 ("the '463 Patent"), showing and describing the "ornamental design for a container" intended to hold garlic, with Hutzler as the assignee from the inventors. Attached hereto as Exhibit 2 is a true and correct copy of the '463 Patent. Hutzler is the owner of the entire right, title, and interest in and to the '463 Patent. The '463 Patent is in full force and effect.

14. Pursuant to 35 U.S.C. § 287, since the issue date of the '463 Patent, Hutzler has marked each garlic container it has designed, manufactured, and sold (under the name "Garlic Saver") in accordance with the '463 Patent with the full patent number for the '463 Patent. Prior to the patent issue date, such products were marked as "patent pending."

### Defendant's Infringement

15. On information and belief, Bradshaw imports household products manufactured in Asia into North America, where it distributes them. Bradshaw is one of the two largest players in the distribution and sales of housewares to supermarket and mass market retailers.

16. On information and belief, Bradshaw pays annual fees to have exclusive rights to permanent space in most supermarket retailers. This is particularly significant because once a company buys space in a supermarket, the supermarket does not sell space to competitors. On average, a company can buy space for between two and five years.

-4-

17. On information and belief, Bradshaw is the exclusive distributor for utensils and gadgets to a major discount department store.

18. On information and belief, Bradshaw has misappropriated the design patents for the Onion Saver and the Garlic Saver, for its own benefit.

19. On information and belief, Bradshaw has sold, and is offering for sale, in this judicial district and other parts of the United States, products that infringe the '114 Patent and the '463 Patent (the "Infringing Products").

20. On information and belief, Bradshaw purchased the Infringing Products from a manufacturer in China.

21. The Onion Saver product manufactured and distributed by Hutzler is based on the design and drawings of the '114 Patent. The onion container being distributed by defendant is clearly and unmistakably manufactured according to the design set forth in the '114 Patent. Attached hereto as Exhibit 3 is a comparison of the '114 Patent and defendant's "Onion Keeper." In particular, the shape of defendant's product, including its round bottom with a flattened base, and the line across the product at approximately halfway from its top, demonstrate infringement.

22. The Garlic Saver product manufactured and distributed by Hutzler is based on the design and drawings depicted in the '463 Patent. The garlic container being distributed by the defendant clearly was manufactured and designed to be identical the design embodied in the '463 Patent. Attached hereto as Exhibit 4 is a comparison of the '463 Patent and defendant's "Garlic Keeper." In particular, the shape of defendant's product, its round bottom with a flattened base, the line across the product at approximately two-thirds from its top, and the product's slits on its base, are identical in every detail.

-5-

23. On information and belief, Bradshaw has sold, and is offering for sale, Infringing Products in this judicial district and other parts of the United States.

24. On information and belief, the Infringing Products were offered for sale at a March 6, 2011 International Housewares Show in Chicago, Illinois.

25. On information and belief, Bradshaw was the source of the Infringing Products offered for sale at the International Housewares Show.

26. On information and belief, Bradshaw began distributing the Infringing Products in Price Chopper Supermarkets on or before May 21, 2011.

27. On information and belief, Bradshaw has distributed the Infringing Products in other supermarket retailers and locations since May 21, 2011.

28. On information and belief, Bradshaw has sold and offered for sale the Infringing Products to companies that have previously purchased products in the Food Saver Line from Hutzler, thereby displacing Hutzler products and harming Hutzler's reputation.

29. On information and belief, in addition to imitating the Onion Saver and the Garlic Saver, Bradshaw has sold and offered for sale products which directly imitate Hutzler's Lemon/Lime Saver, Pepper Saver, and Tomato Saver.

30. Sales for the Food Saver Line of products has consistently grown since the products' introduction. Specifically, in year 2007, sales for the Food Saver Line in supermarkets grew by 1472%; in 2008 by 241%; in 2009 by 46%; and in 2010 by 15%. In year 2007, sales for the Onion Saver and the Garlic Saver in supermarkets grew by 1369%; in 2008 by 255%; in 2009 by 34%; and in 2010 by 13%.

-6-

31. By contrast, for the first time since the inception of the Food Saver Line, sales have declined by 21% in the second half of 2011 because of the introduction of Bradshaw's Infringing Products.



**Irreparable Harm to Hutzler**

32. Bradshaw's importation and distribution of the Infringing Products is with full knowledge of Hutzler's patent rights and business operations.

33. Bradshaw's importation and distribution of the Infringing Products is done with the intent to compete with Hutzler.

34. Prior to filing the present Complaint, Hutzler and its counsel advised defendant of Hutzler's rights in and to the '114 Patent and the '463 Patent and of Hutzler's belief that certain products being distributed by defendant infringed such patents. Bradshaw has not substantively responded to such communications.

35. Hutzler and defendant are direct competitors vying for the business of the same group of customers.

36. Hutzler has built its reputation on the quality and the uniqueness of its products.

37. By its infringing acts, Bradshaw has irreparably harmed Hutzler and such injury will continue and grow unless Bradshaw is enjoined by this Court.

38. The Infringing Products are more cheaply constructed and more cheaply priced than Hutzler's infringed-upon products. On information and belief, the Infringing Products are being sold and offered for sale at a price approximately 25-50 percent lower than the advertised price for the Onion Saver and the Garlic Saver.

39. Defendant's distribution of the Infringing Products has created and will continue to create confusion irreparably damaging Hutzler's reputation and goodwill.

40. Defendant's distribution of the Infringing Products has irreparably decreased and will continue to irreparably decrease the size of Hutzler's market share and, if not enjoined, will cost Hutzler its position as the market leader.

41. Defendant's distribution of the Infringing Products, if not enjoined, will result in irreparable price erosion of Hutzler's patented products in that Hutzler will be forced to drastically change its pricing structure in order to compete with lower-priced "knock-off" products. As a result, Hutzler's reputation will be permanently harmed.

42. Defendant's distribution of the Infringing Products, because they are more cheaply constructed than Hutzler's products, has had and will continue to have an irreparable deleterious effect on customers' general goodwill towards plastic products resembling the type of produce they are designed to store and preserve.

43. Defendant's distribution of the Infringing Products has stalled and reversed Hutzler's sales momentum, causing the loss of at least seven major accounts, and has possibly permanently displaced Hutzler's products in supermarkets.

44. The popularity of the Food Savers Line is responsible for approximately 80 percent of Hutzler's overall sales growth (in a depressed housewares market) in 2010. Prior to the introduction of the Onion Saver in 2006, Hutzler's sales had plateaued. If not for the introduction of the Onion Saver and the Garlic Saver, the company's sales likely would have decreased. Moreover, products in the Food Savers Line often serve as "gateway" or "introductory" products in that they are the initial Hutzler products purchased by customers, who are then introduced to other products in the Hutzler line. Defendant's distribution of the Infringing Products has had and will continue to have an irreparable deleterious effect on Hutzler's sales momentum and profits.

-9-

45. If Bradshaw is not enjoined from unfairly competing and infringing the '114 Patent and the '463 Patent, other potential competitors will be encouraged to distribute "knock-off" products resembling the Onion Saver and the Garlic Saver themselves, and will flood the market with even more cheaply-made and cheaply-priced "knock-off" products. Some of these potential competitors are Hutzler's own present customers.

46. For the first time since the Food Saver Line was introduced by Hutzler, there has been a decline in sales, which is directly attributable to defendant's distribution and sale of the Infringing Products.

47. Because Hutzler's business and reputation, as well as the value of its patents, will be irreparably harmed if Bradshaw is not enjoined, money damages cannot sufficiently compensate Hutzler for the damage caused by Bradshaw's infringing acts.

48. In contrast, Bradshaw will not suffer any cognizable or irreparable injury if it is enjoined.

## COUNT I
### Infringement of the '114 Patent

49. Hutzler incorporates by reference as though fully set forth herein the allegations contained in paragraphs 1 through 48 above.

50. On information and belief, Bradshaw has made, used, imported, sold, and/or offered for sale products that infringe the '114 Patent in violation of 35 U.S.C. § 271(a).

51. On information and belief, Bradshaw has induced others to infringe the '114 Patent by encouraging and promoting the use, manufacture, importation, sale, and/or offer for sale by others of products that infringe the '114 Patent in violation of 35 U.S.C. § 271(b).

-10-

52. On information and belief, Bradshaw had notice and actual knowledge of the '114 Patent before the filing of this action, and its infringement of the '114 Patent has been and continues to be willful and deliberate.

53. Hutzler has been damaged by Bradshaw's infringement of the '114 Patent, in an amount to be determined at trial. Furthermore, by its infringing acts, Bradshaw has irreparably harmed Hutzler and such injury will continue and grow unless Bradshaw is enjoined by this Court.

## COUNT II
### Infringement of the '463 Patent

54. Hutzler incorporates by reference as though fully set forth herein the allegations contained in paragraphs 1 through 48 above.

55. On information and belief, Bradshaw has made, used, imported, sold, and/or offered for sale products that infringe the '463 Patent in violation of 35 U.S.C. § 271(a).

56. On information and belief, Bradshaw has induced others to infringe the '463 Patent by encouraging and promoting the use, manufacture, importation, sale, and/or offer for sale by others of products that infringe the '463 Patent in violation of 35 U.S.C. § 271(b).

57. On information and belief, Bradshaw had notice and actual knowledge of the '463 Patent before the filing of this action, and its infringement of the '463 Patent has been and continues to be willful and deliberate.

58. Hutzler has been damaged by Bradshaw's infringement of the '463 Patent, in an amount to be determined at trial. Furthermore, by its infringing acts, Bradshaw has irreparably harmed Hutzler and such injury will continue and grow unless Bradshaw is enjoined by this Court.

## COUNT III
## Tortious Interference With Business

59. Hutzler incorporates by reference as though fully set forth herein the allegations contained in paragraphs 1 through 48 above.

60. On information and belief, at the time it sold or offered for sale the Infringing Products, Bradshaw knew that Hutzler was selling the Onion Saver and Garlic Saver to various customers within the United States.

61. On information and belief, at the time it sold or offered for sale the Infringing Products, Bradshaw had notice and actual knowledge that the Onion Saver and the Garlic Saver were subject to patents issued to Hutzler by the PTO.

62. On information and belief, Bradshaw knowingly, willfully, and wrongfully interfered with the relationship between Hutzler and its customers by selling or offering to sell Infringing Products to Hutzler's customers either (a) without notifying such Customers that the Infringing Products infringed certain patents held by Hutzler, or (b) falsely representing that such Infringing Products did not infringe such patents.

63. Bradshaw, through its tortious actions, directly and proximately harmed Hutzler by causing Hutzler's customers to cease doing business with Hutzler.

## COUNT IV
## Unfair Competition

64. Hutzler incorporates by reference as though fully set forth herein the allegations contained in paragraphs 1 through 48 above.

65. Hutzler is the exclusive owner of the '114 Patent and the '463 Patent.

66. Hutzler has created the Food Saver Line, and specifically, the Onion Saver and the Garlic Saver, through extensive time, labor, skill, and money.

67. On information and belief, Bradshaw used Hutzler's patented design in competition with Hutzler, gaining an unfair advantage, because Bradshaw bore little or no burden of expense of development.

68. Bradshaw used Hutzler's patented design to the exclusion of Bradshaw, by, among other things, buying exclusive space in supermarkets.

69. By creating a line of products identical to the Food Saver Line, Bradshaw has misappropriated a commercial advantage belonging to Hutzler.

70. By taking and using Hutzler's patented design to compete against Hutzler, Bradshaw has misappropriated a commercial advantage belonging to Hutzler.

71. Bradshaw has also engaged in bad faith misappropriation of the labors of Hutzler which is likely to cause confusion, or to deceive purchasers as to the origin of the goods.

72. Bradshaw's actions have caused significant commercial damage to Hutzler.

73. Bradshaw's acts have been intentional, willful, and in conscious disregard of Hutzler's rights, entitling Hutzler to the remedies provided under New York law.

**WHEREFORE**, plaintiff Hutzler demands judgment against defendant as follows:

(1) Adjudging that defendant's products infringe the '114 Patent and the '463 Patent;

(2) Adjudging that defendant's infringement of the '114 Patent and the '463 Patent was willful and deliberate, and deeming this case exceptional under 35 U.S.C. § 285;

(3) Adjudging defendant to have tortiously interfered with Hutzler's business;

(4) Adjudging defendant to have unfairly competed with Hutzler;

(5) Preliminarily and permanently enjoining defendant, its subsidiaries, affiliates, parents, successors, assigns, officers, agents, servants, employees, attorneys, and all persons acting in concert or in participation with defendant, from unfairly competing with Hutzler and from infringing or inducing infringement of the '114 Patent and/or the '463 Patent and, specifically, from directly or indirectly making, using, selling, or offering for sale any products embodying the inventions of the '114 Patent and/or the '463 Patent during their terms, without the express written authority of Hutzler.

(6) Awarding Hutzler damages in connection with Counts I and II in an amount to be determined at trial, and the trebling thereof, pursuant to 35 U.S.C. § 284 or, alternatively, damages in connection with Counts I and II pursuant to 35 U.S.C. § 289 based on an accounting of defendant's profits derived from its acts of infringement;

(7) Awarding Hutzler damages in connection with Counts III and IV in an amount to be determined at trial;

(8) Awarding Hutzler its costs pursuant to 35 U.S.C. § 284 and its reasonable attorneys' fees pursuant to 35 U.S.C. § 285;

(9) Awarding all such other and further relief as the Court deems just and proper under the circumstances.

New York, New York
October 13, 2011

Respectfully submitted,

CURTIS, MALLET-PREVOST,
COLT & MOSLE LLP

By: _____
Turner P. Smith (TS 8052)
Michael R. Graif (MG 4795)
Nicole M. Mazanitis (NM 1983)
101 Park Avenue
New York, New York 10178
(212) 696-6000

*Attorneys for Plaintiff*