Turner P. Smith (TS 8052)
Michael R. Graif (MG 4795)
Curtis, Mallet-Prevost, Colt & Mosle LLP
101 Park Avenue
New York, New York  10178-0061
Telephone: (212) 696-6000
Facsimile: (212) 697-1559

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------ X
                                                      :

HUTZLER MANUFACTURING COMPANY, INC.    :

                        :

                 Plaintiff,    :

                        :

             -against-    :

                        :  11 Civ. 7211 (PGG) (RLE)

BRADSHAW INTERNATIONAL, INC.,    :

                        :

                 Defendant.    :

                        :

------------------------------------------------------------------------ X

## MEMORANDUM OF LAW IN SUPPORT OF
## PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

10321703

## <u>TABLE OF CONTENTS</u>

**PAGE #**

Preliminary Statement..................................................................................................1

Statement of Facts.......................................................................................................2

Hutzler's Patents.........................................................................................................2

Defendant's Infringement ...........................................................................................3

ARGUMENT ..............................................................................................................5

  I. HUTZLER IS ENTITLED TO A PRELIMINARY INJUNCTION AGAINST
     DEFENDANT AS ALL FACTORS TO BE CONSIDERED FAVOR HUTZLER     6

    A. Hutzler is Likely to Succeed on the Merits..................................................7

       1.   Hutzler is Likely to Succeed on the Merits of its Claim of Patent
           Infringement.................................................................................7

           i.   The Patents are Valid ...........................................................7

           ii.  Defendant's Products Infringe Hutzler's Patents.................7

       2.   Hutzler is Likely to Succeed on the Merits of its Claim of Unfair
           Competition................................................................................11

    B. Hutzler Will Suffer Irreparable Harm in the Absence of an Injunction ......13

       1.   Hutzler Was Irreparably Harmed By Defendant's Patent Infringement...............13

           i.   Reputational Harm .............................................................14

           ii.  Decrease in Market Share ..................................................14

           iii.  Price Erosion .....................................................................15

           iv.  "Market" and "Goodwill" Erosion......................................16

           v.   Negative Effect on Sales Momentum and Profits..............16

           vi.  Encouragement of Further Infringement by Other Competitors...................17

       2.   Hutzler Was Irreparably Harmed By Defendant's Unfair Competition ...............17

    C. The Balance of Hardships Favors Hutzler ....................................................18

       1.   A Balancing of Hardships Clearly Favors Hutzler With Regard to
           Hutzler's Patent Infringement Claims ......................................18

       2.   A Balancing of Hardships Clearly Favors Hutzler With Regard to
           Hutzler's Unfair Competition Claims ......................................19

    D. The Public Interest Favors Protecting Hutzler's Patent Rights ...................20

Conclusion .................................................................................................................21

# TABLE OF AUTHORITIES

PAGE #

## CASES

Amazon.com, Inc. v. Barnesandnoble.com, Inc.,
  239 F.3d 1343 (Fed. Cir. 2001)................................................................. 6
American Eagle Wheel Corp. v. American Racing Equip., Inc.,
  No. 97-1275, 1997 WL 643916 (Fed. Cir. Oct. 20, 1997).................................... 5, 10
American Standard, Inc. v. Lyons Indus., Inc.,
  No. 97-4806, 1998 U.S. Dist. LEXIS 22882 (D.N.J. Feb. 17, 1998) ................................. 9, 10
Anacomp, Inc. v. Shell Knob Servs.,
  No. 93 Civ. 4003, 1994 U.S. Dist. LEXIS 223 (S.D.N.Y. Jan. 7, 1994)................................. 18
Apotex USA, Inc. v. Merck & Co.,
  254 F.3d 1031 (Fed. Cir. 2001), cert. denied, 534 U.S. 1172 (2002) ....................... 7
AstraZeneca LP v. Apotex, Inc.,
  633 F.3d 1042 (Fed. Cir. 2010).................................................................. 6
Canon, Inc. v. GCC Int'l Ltd.,
  No. 2006-1615, 2008 WL 213883 (Fed. Cir. Jan. 25, 2008) ............................................ 15, 19
Catalina Lighting, Inc. v. Lamps Plus, Inc.,
  295 F.3d 1277 (Fed. Cir. 2002)........................................................... 8, 9, 10
Contessa Food Prods., Inc. v. Conagra, Inc.,
  282 F.3d 1370 (Fed. Cir. 2002)................................................................. 7, 8
Diversified Mktg., Inc. v. Estee Lauder, Inc.,
  705 F. Supp. 128 (S.D.N.Y. 1988).............................................................. 11
Durling v. Spectrum Furniture Co.,
  101 F.3d 100 (Fed. Cir. 1996)................................................................. 8
eBay, Inc. v. MercExchange LLC,
  547 U.S. 388 (2006)............................................................................ 13
Esbin & Alter, LLP v. Zappier,
  No. 08 Civ. 313, 2010 U.S. Dist. LEXIS 9487 (S.D.N.Y. Feb. 4, 2010) ................................ 17
Etna Prods. Co., Inc. v. Q Mktg. Group, Ltd.,
  No. 03-3805, 2004 WL 1769794 (S.D.N.Y. Aug. 4, 2004)................................................. 9, 10
Faiveley Transp. USA, Inc. v. Wabtec Corp.,
  No. 10-4062, 2010 U.S. Dist. LEXIS 125415 (S.D.N.Y. Nov. 29, 2010).............................. 11
Glaxo Group Ltd. v. Apotex, Inc.,
  64 Fed. Appx. 751 (Fed. Cir. Apr. 22, 2003)......................................... 15, 16, 19, 20
Gorham Mfg. Co. v. White, 81 U.S. 511 (1871) ......................................................... 8
Guttman, Inc. v. Kopykake Enters.,
  302 F.3d 1352 (Fed. Cir. 2002).............................................................. 6
Hasbro, Inc. v. Lanard Toys, Ltd.,
  858 F.2d 70 (2d Cir. 1988)................................................................. 7
Hybritech, Inc. v. Abbott Labs.,
  849 F.2d 1446 (Fed. Cir. 1988)............................................................. 20
Jack Schwartz Shoes, Inc. v. Skechers, U.S.A., Inc.,
  233 F. Supp. 2d 512 (S.D.N.Y. 2002)....................................................... 9

Jacobson v. Cox Paving Co.,
  No. 89 Civ. 1786, 1991 U.S. Dist. LEXIS 17787 (D. Ariz. May 16, 1991)...................... 14, 17
KeyStone Retaining Wall Sys., Inc. v. Westrock, Inc.,
  997 F.2d 1444 (Fed. Cir. 1993)............................................................................................. 5
Kraft Gen. Foods v. Allied Old English,
  831 F. Supp. 123 (E.D.N.Y. 2006) ...................................................................................... 17
National Lampoon, Inc. v. American Broadcasting Cos.,
  376 F. Supp. 733 (S.D.N.Y. 1974), aff'd, 497 F.2d 1343 (2d Cir. 1974).............................. 17
New York City Triathlon, LLC v. NYC Triathlon Club, Inc.,
  704 F. Supp. 2d 305 (S.D.N.Y. 2010).................................................................................. 11
Norbrook Labs. Ltd. v. G.C. Hanford Mfg. Co.,
  126 Fed. Appx. 507 (2d Cir. 2005) ................................................................................. 6, 11
Oakley, Inc. v. Sunglass Hut Int'l,
  316 F.3d 1331 (Fed. Cir. 2003).............................................................................................. 6
Omega Importing Corp. v. Petri-Kine Camera Corp.,
  451 F.2d 1190 (2d Cir. 1971)............................................................................................... 17
Pfizer, Inc. v. Teva Pharms., USA,
  429 F.3d 1364 (Fed. Cir. 2005).............................................................................. 7, 13, 19, 20
Pharmacia & Upjohn Co. v. Ranbaxy Pharms., Inc.,
  85 Fed. Appx. 205 (Fed. Cir. Dec. 23, 2003) ...................................................................... 15
Polymer Techs. v. Bridewell,
  103 F.3d 970 (Fed. Cir. 1996)................................................................................................ 6
Purdue Pharma L.P. v. Boehringer Ingelheim GmbH,
  98 F. Supp. 2d 362 (S.D.N.Y. 2000).................................................................................... 15
Roy Export Co. v. Columbia Broad. Sys., Inc.,
  672 F.2d 1095 (2d Cir. 1982)............................................................................................... 11
Rubbermaid Comm. Products, Inc. v. Contico Int'l, Inc.,
  836 F. Supp. 1247 (W.D. Va. 1993) .................................................................................... 10
Sanofi-Synthelabo v. Apotex, Inc.,
  470 F.3d 1368 (Fed. Cir. 2006)...................................................................................... 15, 20
Schumer v. Lab Computer Sys.,
  308 F.3d 1304 (Fed. Cir. 2002).............................................................................................. 7
SEB S.A. v. Montgomery Ward & Co., Inc.,
  77 F. Supp. 399 (S.D.N.Y. 1999).............................................................................. 14, 16, 19
Smith Int'l, Inc. v. Hughes Tool Co.,
  718 F.2d 1573 (Fed. Cir. 1983).............................................................................................. 5
Stein Indus., Inc. v. Jarco Indus., Inc.,
  934 F. Supp. 55 (E.D.N.Y. 1995) .................................................................................. 14, 15
Towers Fin. Corp. v. Dun & Bradstreet, Inc.,
  803 F. Supp. 820 (S.D.N.Y. 1992)....................................................................................... 11
Unidynamics Corp. v. Automatic Prods. Int'l, Ltd.,
  157 F.3d 1311 (Fed. Cir. 1998).............................................................................................. 8
Upjohn Co. v. Medtron Labs, Inc.,
  751 F. Supp. 416 (S.D.N.Y. 1990).......................................................................... 5, 16, 19
Warner Bros., Inc. v. Gay Toys, Inc.,
  658 F.2d 76 (2d Cir. 1981).................................................................................................. 17

Wisdom Import Sales Co., L.L.C. v. Labatt Brewing Co.,
 Ltd., 339 F.3d 101 (2d Cir. 2003) ................................................................. 6, 13

**STATUTES**

35 U.S.C. § 282 ................................................................................................... 7
35 U.S.C. § 283 ................................................................................................... 1

**FEDERAL RULES**

Fed. R. Civ. P. 65 ............................................................................................... 1

Plaintiff Hutzler Manufacturing Company, Inc. ("Hutzler"), by its attorneys, respectfully submits this memorandum of law in support of its motion for a preliminary injunction pursuant to Fed. R. Civ. P. 65 and 35 U.S.C. § 283.

### Preliminary Statement

Hutzler commenced this action on October 13, 2011, based on the infringement of U.S. Patent No. D538,114 and D592,463, tortious interference, and unfair competition by defendant Bradshaw International, Inc. ("Bradshaw"). Hutzler's patents are design patents. They depict produce containers designed to resemble the types of produce they hold and preserve. Bradshaw has sold, and is offering for sale, products that infringe the Patents (the "Infringing Products"). Defendant's infringement of Hutzler's patents is apparent upon a comparison of the designs depicted in the patents with the Infringing Products.

In addition, Hutzler invested extensive time, labor, skill, and money in developing the Food Saver Line of products. Bradshaw then misappropriated Hutzler's patented design in competition with Hutzler, gaining an unfair advantage because Bradshaw bore little or no burden of expense of development. Additionally, by creating a line of products identical to the Food Saver Line, Bradshaw has misappropriated a commercial advantage belonging to Hutzler.

Defendant's distribution of the Infringing Products has irreparably harmed Hutzler and, if defendant is not enjoined, will continue to irreparably harm Hutzler by, *inter alia*: (a) damaging Hutzler's reputation and goodwill; (b) decreasing the size of Hutzler's market share and costing Hutzler its position as the market leader; (c) deleteriously affecting Hutzler's pricing structure; (d) negatively affecting customers' general goodwill towards similar products in the Food Saver Line; (e) impeding Hutzler's sales momentum and costing it significant

profits; and (f) encouraging other potential competitors, some of which may be current customers of Hutzler, to distribute "knock-off" products themselves.

Accordingly, a preliminary injunction is warranted to protect Hutzler's patent rights and prevent any further irreparable harm to its business and reputation.

## Statement of Facts

## Hutzler's Patents

Hutzler, a manufacturer and distributor of housewares, has been family owned and operated since 1938.  See Declaration of Lawrence R. Hutzler, dated October 19, 2011 ("Hutzler Decl."), ¶ 2.  Since its inception, Hutzler has been a pioneer in the housewares industry.  Id.  For example, in the 1960s, Hutzler began molding cooking and serving utensils with Melamine, the highest quality plastic available.  Id., ¶ 3.  In the 1970s, Hutzler pioneered the manufacture of fiberglass-reinforced nylon utensils.  Id.  In the 1980s, Hutzler began manufacturing unique, innovative baking gadgets.  Id.

Over the past decade, the housewares industry has seen a major shift in structure. Id., ¶ 4. There has been tremendous consolidation among retailers and many of the smaller players have gone out of business.  Id.  Many of Hutzler's customers have also become its "competitors" in the direct importation of products.  Id.  While Hutzler was one of the first in the industry to secure the sourcing of products overseas, today many of Hutzler's customers have the same ability, due to globalization.  Id.  This has compelled Hutzler to take strategic steps to move up the innovation ladder in order to compete.  Id.  In particular, Hutzler has had to develop new and unique products itself (or innovate in the use of packaging), instead of relying on the company's manufacturing partners or selling "knock-off" products, as many importers now do. Id.  Hutzler now focuses on designing products that are unique in features and/or design, and it

has taken steps to protect these innovations through the use of utility and design patents.  <u>Id.</u>
Nearly all of the company's revenue growth comes from new products.  <u>Id.</u>

Over the past six years, Huztler has introduced a line of plastic products designed
to store and keep fresh various types of produce, some of which resemble the type of produce
they store.  <u>Id.</u>, ¶ 5.  This line of products is called the "Food Saver Line."  <u>Id.</u>  Two products in
particular – the "Onion Saver" and the "Garlic Saver" – are covered by U.S. patents.  <u>Id.</u>, ¶ 6.

Hutzler Manufacturing's design for its Onion Saver product is protected by U.S.
Patent No. D538,114 ("<u>the '114 Patent</u>"), issued on March 13, 2007.  <u>Id.</u>, ¶ 9.  Its Garlic Saver
design is protected by U.S. Patent No. D592,463 ("<u>the '463 Patent</u>"), issued on May 19, 2009.
<u>Id.</u>, ¶ 11.  Hutzler is the owner of the entire right, title, and interest in and to the '114 Patent and
the '463 Patent (the "<u>Patents</u>").  <u>Id.</u>, ¶ 9, 11.  The Patents are each in full force and effect.  <u>Id.</u>

Designing these two products was not an easy task.  <u>Id.</u>, ¶ 7.  Each product had its
own design challenges and the design process itself was an expensive and time-consuming
endeavor.  <u>Id.</u>  A great deal of time and money was spent working with product development
consultants and 3D designers/model-makers.  <u>Id.</u>  Each product went through numerous
iterations before arriving at its final design.  <u>Id.</u>  The process took between six and nine months
for each of the two products.  <u>Id.</u>

Hutzler's Food Saver Line has quickly become the company's most popular
product line.  <u>Id.</u>, ¶ 8.  Sales of products in the Food Saver Line represent approximately 63
percent of Hutzler's sales and, specifically, sales of the Onion Saver and the Garlic Saver
account for 27 percent of the company's sales.  <u>Id.</u>

## Defendant's Infringement

Defendant Bradshaw is one of the two largest players in the distribution and sales
of housewares to supermarket and mass market retailers.  <u>Id.</u>, ¶ 14.  Bradshaw pays annual fees

to have exclusive rights to permanent space on the shelves of most supermarket retailers.  Id.
This is particularly significant because once a company buys space in a supermarket, the
supermarket does not sell space to competitors.  Id.  On average, a company can buy space for
between two and five years.  Id.  In addition, Bradshaw is the exclusive distributor for utensils
and gadgets to a major discount department store.  Id.

   Defendant Bradshaw imports household products manufactured in Asia into
North America, where it distributes them.  Id., ¶ 15.  Bradshaw has sold, and is offering for sale,
the Infringing Products in this judicial district and other parts of the United States.  Id., ¶ 19.
These Infringing Products include an onion food saver named, the "Onion Keeper," and a garlic
food saver entitled, the "Garlic Keeper."  Id., ¶¶ 22, 23.  Bradshaw is believed to have purchased
the Infringing Products from a manufacturer in China.  Id., ¶ 15.

   The Infringing Products were offered for sale at a March 6, 2011 International
Housewares Show in Chicago, Illinois.  Id., ¶ 17.  Bradshaw was the source of the Infringing
Products offered for sale at the trade show.  Id.  Bradshaw began distributing the Infringing
Products in Price Chopper Supermarkets on or before May 21, 2011.  Id., ¶ 18.  In addition,
Bradshaw has distributed the Infringing Products in other supermarket retailers and locations
since May 21, 2011.  Id., ¶ 19.

   Defendant has sold and offered for sale the Infringing Products to companies that
have previously purchased products in the Food Saver Line from Hutzler.  Id., ¶ 20.  In addition
to copying the Onion Saver and the Garlic Saver, Bradshaw has sold and offered for sale
products which directly imitate Hutzler's Lemon/Lime Saver, Pepper Saver, and Tomato Saver
(the "Keeper Line").  Id., ¶ 21.  Defendant has done so with full knowledge of Hutzler's patent

rights and business operations and with the intention of competing with and displacing Hutzler's products.  Id., ¶ 24.

Prior to filing the present Complaint, Hutzler and its counsel advised defendant of Hutzler's rights in and to the '114 Patent and the '463 Patent and of Hutzler's belief that certain products being distributed by defendant infringed such patents.  Id.  Bradshaw has not substantively responded to such communications.  Id.

By its acts, Bradshaw has irreparably harmed Hutzler's business and reputation, as well as the value of its patents, and such injuries will continue and grow unless Bradshaw is enjoined by this Court.  Id., ¶¶ 24-37.

## ARGUMENT

The grant of a design patent is the grant of the right to exclude others from utilizing the patented design without consent.  See American Eagle Wheel Corp. v. American Racing Equip., Inc., No. 97-1275, 1997 WL 643916, at *1 (Fed. Cir. Oct. 20, 1997) (unpublished) (citing KeyStone Retaining Wall Sys., Inc. v. Westrock, Inc., 997 F.2d 1444, 1450 (Fed. Cir. 1993)).  Protection of this right to exclude is embodied in 35 U.S.C. § 283, which provides that injunctions may be granted under the principles of equity to "prevent the violation of any rights secured by patent, on such terms as the court deems reasonable."  The Court of Appeals for the Federal Circuit, the law of which "governs the determination of whether a preliminary injunction should issue under 35 U.S.C. § 283" (see Upjohn Co. v. Medtron Labs, Inc., 751 F. Supp. 416, 421-22 (S.D.N.Y. 1990)), has recognized that the failure to enforce the right to exclude granted to the owner of a patent would "seriously undermine" the express purpose of the Acts of Congress relating to patents.  See Smith Int'l, Inc. v. Hughes Tool Co., 718 F.2d 1573, 1578 (Fed. Cir. 1983).

Similarly, a plaintiff has a right to preclude a defendant from unfairly competing with it by misappropriating plaintiff's labors and expenditures.  See Norbrook Labs. Ltd. v. G.C. Hanford Mfg. Co., 126 Fed. Appx. 507, 509 (2d Cir. 2005).

## I.

### HUTZLER IS ENTITLED TO A PRELIMINARY INJUNCTION AGAINST DEFENDANT AS ALL FACTORS TO BE CONSIDERED FAVOR HUTZLER

The decision whether to grant a preliminary injunction in a patent dispute is left to the discretion of the court.  See AstraZeneca LP v. Apotex, Inc., 633 F.3d 1042, 1049 (Fed. Cir. 2010); Polymer Techs. v. Bridewell, 103 F.3d 970, 973 (Fed. Cir. 1996).  However, as directed by the Federal Circuit, district courts must consider the following factors when deciding whether to grant a preliminary injunction:  "(1) the likelihood of the patentee's success on the merits; (2) irreparable harm if the injunction is not granted; (3) the balance of hardships between the parties; and (4) the public interest."  Oakley, Inc. v. Sunglass Hut Int'l, 316 F.3d 1331, 1338-39 (Fed. Cir. 2003) (citing Amazon.com, Inc. v. Barnesandnoble.com, Inc., 239 F.3d 1343, 1350 (Fed. Cir. 2001)).  No single factor is determinative; rather, "[t]he court must balance these factors against one another and against the extent of the relief sought."  Guttman, Inc. v. Kopykake Enters., 302 F.3d 1352, 1363 (Fed. Cir. 2002) (citation omitted).

Similarly, for unfair competition claims, preliminary injunctive relief is appropriate where the plaintiff establishes:  (1) either "(a) likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation plus a balance of hardships tipping decidedly in plaintiff's favor;" and (2) "the likelihood of irreparable injury in the absence of such an injunction."  Wisdom Import Sales Co., L.L.C. v. Labatt Brewing Co., Ltd., 339 F.3d 101, 108 (2d Cir. 2003) (citation and quotation omitted); see

also Hasbro, Inc. v. Lanard Toys, Ltd., 858 F.2d 70, 83 (2d Cir. 1988) (remanding for entry of a preliminary injunction).

Because consideration of each of these factors weighs in Hutzler's favor, an injunction preventing defendant from distributing the Keeper Line is warranted.

### A.   Hutzler is Likely to Succeed on the Merits

#### 1.   *Hutzler is Likely to Succeed on the Merits of its Claim of Patent Infringement*

The first factor to be considered is the likelihood of success of Hutzler establishing the validity of the Patents and defendant's infringement thereof.  See Pfizer, Inc. v. Teva Pharms., USA, 429 F.3d 1364, 1372 (Fed. Cir. 2005).  Hutzler's '114 Patent and '463 Patent are valid, and defendant's products infringe these patents.

#### i.   The Patents are Valid

By statute, "[a] patent shall be presumed valid."  35 U.S.C. § 282.  Accordingly, "[t]he burden of establishing invalidity of a patent or any claim thereof shall rest on the party asserting such invalidity."  Id.  To overcome the presumption of validity, "the party challenging a patent must prove facts supporting a determination of invalidity by clear and convincing evidence."  Schumer v. Lab Computer Sys., 308 F.3d 1304, 1315 (Fed. Cir. 2002) (citing Apotex USA, Inc. v. Merck & Co., 254 F.3d 1031, 1036 (Fed. Cir. 2001), cert. denied, 534 U.S. 1172 (2002)).  No such evidence – let alone clear and convincing evidence – is known to exist.

#### ii.   Defendant's Products Infringe Hutzler's Patents

Determining whether a design patent has been infringed requires:  "(1) construction of the patent claim, and (2) comparison of the construed claim to the accused product."  Contessa Food Prods., Inc. v. Conagra, Inc., 282 F.3d 1370, 1376 (Fed. Cir. 2002).  "In construing a design patent claim, the scope of the claimed design encompasses 'its visual

appearance as a whole,' and in particular 'the visual impression it creates.'" Id. (quoting Durling v. Spectrum Furniture Co., 101 F.3d 100, 104-05 (Fed. Cir. 1996)).  Critically, "the patented and accused designs do not have to be identical in order for design patent infringement to be found." Id.

Courts employ two tests when considering whether infringement has occurred: the "ordinary observer" test and the "point of novelty" test.  See Unidynamics Corp. v. Automatic Prods. Int'l, Ltd., 157 F.3d 1311, 1323 (Fed. Cir. 1998).  The "ordinary observer" test dictates that "if, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other, the first one patented is infringed by the other."  Catalina Lighting, Inc. v. Lamps Plus, Inc., 295 F.3d 1277, 1286 (Fed. Cir. 2002) (quoting Gorham Mfg. Co. v. White, 81 U.S. 511, 528 (1871)).  The "point of novelty" test focuses on whether the defendant's product appropriates the distinguishing point(s) of novelty found in the plaintiff's product.  Id. at 1286-87.

Here, the striking resemblance between the Infringing Products and Hutzler's patented designs suggests an intent on defendant's part to deceive potential customers. Moreover, defendant has manifestly replicated the various points of novelty depicted in each of the Patents.

The '114 Patent (Hutzler Decl., Exhibit 1) depicts the patented design for an onion container.  Hutzler manufactures and distributes its Onion Saver product pursuant to this design.  Id., ¶ 9.  Defendant's product clearly is being manufactured according to the design set forth in the '114 Patent.  A comparison of the '114 Patent and defendant's "Onion Keeper" is annexed to the Hutzler Declaration as Exhibit 3.  In particular, the bulbous shape of defendant's

product, its round bottom with a flattened base, and the line across the product at approximately

halfway from its top, demonstrate infringement.

The '463 Patent (id., Exhibit 2) depicts the patented design for a garlic container.

Pursuant to this design, Hutzler manufactures and distributes its Garlic Saver product. Id., ¶ 11.

The garlic container being distributed by defendant clearly was manufactured and designed to be

identical to Hutzler's design as embodied in the '463 Patent.  A comparison of the '463 Patent

and defendant's "Garlic Keeper" is annexed to the Hutzler Declaration as Exhibit 4.  In

particular, the shape of defendant's product, its round bottom with a flattened base, the line

across the product at approximately two-thirds from its top, and the product's slits on its base,

demonstrate infringement.

In sum, a visual comparison of defendant's products to Hutzler's patented designs

leads to the clear conclusion that "an ordinary observer could easily confuse" the two.  Jack

Schwartz Shoes, Inc. v. Skechers, U.S.A., Inc., 233 F. Supp. 2d 512, 514 (S.D.N.Y. 2002)

(finding ordinary observer test satisfied where a "visual comparison of the . . . design patent with

[defendant's] shoe reveals that the overall look of the shoes is extremely similar"); Catalina

Lighting, Inc. v. Lamps Plus, Inc., 295 F.3d 1277, 1287 (Fed. Cir. 2002) (jury properly found

that appellant's lamp was "substantially the same" as patented lamp and thus met "ordinary

observer" test); Etna Prods. Co., Inc. v. Q Mktg. Group, Ltd., No. 03-3805, 2004 WL 1769794,

at *9 (S.D.N.Y. Aug. 4, 2004) ("Simply looking at the two mirrors reveals that the [defendant's]

[m]irror is a virtual duplicate of the design depicted in the [plaintiff's] patent."); American

Standard, Inc. v. Lyons Indus., Inc., No. 97-4806, 1998 U.S. Dist. LEXIS 22882, at *24 (D.N.J.

Feb. 17, 1998) ("A visual comparison of [plaintiff's] bowl pattern design and [defendant's]

single bowl sink reveals that the two designs are substantially similar to the eye of an ordinary observer.").

Moreover, an examination of defendant's products and Hutzler's patented designs reveals that defendant's products have appropriated numerous distinguishing points of novelty as depicted in Hutzler's patents, including ridging, a sliding design, and slits across the bottom of the Garlic Saver.  See American Eagle Wheel Corp. v. American Racing Equip., Inc., No. 97-1275, 1997 WL 643916, at *2 (Fed. Cir. Oct. 20, 1997) (unpublished) (district court properly found "point of novelty" test satisfied where plaintiff's patented wheel design and defendant's design "were similarly contoured and surfaced"); Catalina Lighting, Inc., 295 F.3d at 1287 (jury properly found "point of novelty" test satisfied where appellant's lamp "design appropriated the patented design's points of novelty," including the "spacing and placement of the bullet lights and the shape of the diffuser at the top of the lamp"); Etna Prods. Co., Inc., 2004 WL 1769794, at *9 (finding "point of novelty" test met where defendant's product "appropriate[d] the points of novelty" of the patented design, including "semi-circular strips of chrome on the right and left sides connecting the two receptacles"); American Standard, Inc., 1998 U.S. Dist. LEXIS 22882, at *25-29 (finding that defendant's sinks satisfied "point of novelty" test where sinks appropriated shapes of coves, curves and holes depicted in plaintiff's design patents); Rubbermaid Comm. Products, Inc. v. Contico Int'l, Inc., 836 F. Supp. 1247, 1259-60 (W.D. Va. 1993) (finding "point of novelty" test satisfied where defendants' food containers appropriated proportions and recesses depicted in plaintiff's design patent).

As in the American Standard case, "[t]he similarity between [defendant's products] and [Hutzler's] design[s] is of course no accident."  American Standard, Inc., 1998 U.S. Dist. LEXIS 22882, at *29.  Defendant's products clearly and unmistakably have been

manufactured to replicate the designs depicted in Hutzler's patents.  In so doing, the source of

defendant's products appropriated the overall designs depicted in the patents as well as the

various points of novelty set forth therein.  Accordingly, the likelihood of a finding of

infringement by defendant is substantial.

> 2. ***Hutzler is Likely to Succeed on the Merits of its Claim of Unfair Competition***

The first factor to be considered is the likelihood of success of Hutzler

establishing that defendant misappropriated Hutzler's benefit or property right for a commercial

advantage.  See Norbrook Labs. Ltd. v. G.C. Hanford Mfg. Co., 126 Fed. Appx. 507, 509 (2d

Cir. 2005) ("[T]he essence of an unfair competition claim . . . is that the defendant has

misappropriated the labors and expenditures of another."); Towers Fin. Corp. v. Dun &

Bradstreet, Inc., 803 F. Supp. 820, 823 (S.D.N.Y. 1992) (citing Roy Export Co. v. Columbia

Broad. Sys., Inc., 672 F.2d 1095, 1105 (2d Cir. 1982)).  In particular, a plaintiff must show that

defendant misappropriated plaintiff's labors, skills, expenditures, or goodwill and displayed

some element of bad faith in doing so.  See Faiveley Transp. USA, Inc. v. Wabtec Corp., No. 10-

4062, 2010 U.S. Dist. LEXIS 125415, at *22 (S.D.N.Y. Nov. 29, 2010).

Plaintiff must also show that defendant's products are likely to cause confusion or

to deceive purchasers as to the origin of the goods.  See New York City Triathlon, LLC v. NYC

Triathlon Club, Inc., 704 F. Supp. 2d 305, 325 (S.D.N.Y. 2010).  The concept of unfair

competition has been interpreted liberally and includes passing off one's product as that of

another, thereby misleading the public.  See Diversified Mktg., Inc. v. Estee Lauder, Inc., 705 F.

Supp. 128, 131 (S.D.N.Y. 1988) (citations omitted).

Bradshaw has copied Hutzler's entire line of Food Saver Products, resulting in

Bradshaw misappropriating a commercial advantage belonging to Hutzler.  Specifically,

Bradshaw misappropriated labors, skills, expenditures, and goodwill that Hutzler accumulated while developing, marketing, and selling the Food Savor Line.  In addition to copying the Onion Saver and the Garlic Saver, Bradshaw has sold and offered for sale the Keeper Line, which directly imitates Hutzler's Lemon/Lime Saver, Pepper Saver, and Tomato Saver.  <u>See</u> Hutzler Decl., ¶ 21.  Since the Food Saver Line's inception six years ago, Bradshaw has devoted years to perfecting the products; each product went through numerous iterations before arriving at its final design.  <u>Id.</u>, ¶¶ 5, 7.  Hutzler has also developed a reputation for producing high-quality goods.  <u>Id.</u>, ¶ 26.  Knowing that the Hutzler Food Saver Line was successful, Bradshaw produced identical products.  In addition, Hutzler and its counsel advised defendant of Hutzler's rights in and to the '114 Patent and the '463 Patent.  <u>Id.</u>, ¶ 24.  Therefore, Bradshaw's distribution of the Keeper Line was made in bad faith.

   Finally, several factors weigh in favor of a likelihood of confusion.  <u>First</u>, the similarity between Hutzler's Food Saver Line and Bradshaw's Food Keeper Line is obvious.  Bradshaw chose the exact produce Hutzler includes in its Food Saver Line for its Food Keeper Line.  All of the containers are essentially the same size, shape, and color, and operate to preserve produce.  <u>Second</u>, Hutzler and Bradshaw are direct competitors.  Because the services and products provided by Hutzler and Bradshaw are essentially the same, consumers are likely to confuse the origin of the products.  <u>Finally</u>, Bradshaw has taken no steps to differentiate itself from Hutzler in supermarkets, or in advertisements.  Bradshaw intends to pass off its goods as those of Hutzler, thereby misleading the public.

   Accordingly, the likelihood of a finding of unfair competition by defendant is substantial.

**B.**     <u>Hutzler Will Suffer Irreparable Harm in the Absence of an Injunction</u>

*1.*     ***Hutzler Was Irreparably Harmed By Defendant's Patent Infringement***

The Second Circuit defines "irreparable harm" as "certain and imminent harm for which a monetary award does not adequately compensate." <u>Wisdom</u>, 339 F.3d at 113.  To prove irreparable harm, a plaintiff must demonstrate that absent a preliminary injunction it will suffer an injury that is neither remote nor speculative, but actual and imminent, and one that cannot be remedied if a court waits until the end of trial to resolve the harm.  <u>Id.</u> (citation omitted).

It has long been the rule in the Federal Circuit that where a holder of a patent makes a strong showing of the likelihood of success on the merits of its claim of infringement and the validity of its patent, irreparable harm is presumed.  <u>See</u> <u>Pfizer, Inc v. Teva Pharms., USA</u>, 429 F.3d 1364, 1381 (Fed. Cir. 2005) ("We have consistently held that a district court should presume that a patent owner will be irreparably harmed when, as here, a patent owner establishes a strong showing of likely infringement of a valid and enforceable patent.").[1]  Even in the absence of such a presumption, the instant case presents a number of recognized circumstances as to which money damages are considered inadequate compensation.

Courts have "issued preliminary injunctions on the basis of a finding of only a few of the following irreparable harm factors," *each* of which is present here:

> . . . Will the defendant's continuing infringement interfere with the plaintiff's ability to control the use and licensing of the patented technology?

> . . . Will the defendant's continuing infringement erode the plaintiff's position in the market?

---

[1]   While this rule has been called into question following the Supreme Court's decision in <u>eBay, Inc. v. MercExchange LLC</u>, 547 U.S. 388 (2006), the Federal Circuit has yet to address whether that holding (which addressed permanent injunctions and did not mention the word "presumption") should be extended to preclude a court, in the context of a motion for a preliminary injunction, from presuming irreparable harm on the basis of a strong showing of infringement.

> . . . Will the defendant's continuing infringement encourage others to infringe?
>
> . . . Will issuance of an injunction deter other existing or potential infringers and influence them to back off?
>
> . . . Are plaintiff and defendant direct competitors trying to influence the same group of customers?
>
> . . . Will defendant's continued infringement have a substantial deleterious impact on plaintiff's . . . pricing structure?
>
> . . . Will plaintiff lose substantial profits from defendant's continuing infringement?
>
> . . . Has the defendant destroyed the value of the plaintiff's patent?

Jacobson v. Cox Paving Co., No. 89 Civ. 1786, 1991 U.S. Dist. LEXIS 17787, at *44-45 (D.

Ariz. May 16, 1991) (collecting cases).

### i.   Reputational Harm

Hutzler has built its reputation on the quality and the uniqueness of its products.

See Hutzler Decl., ¶ 26.   Bradshaw's Infringing Products are more cheaply constructed and

more cheaply priced (approximately 25-50 percent lower) than Hutzler's infringed-upon

products.  Id., ¶ 27.   Defendant's distribution of the Infringing Products has created and will

continue to create confusion irreparably damaging Hutzler's reputation and goodwill.  See Stein

Indus., Inc. v. Jarco Indus., Inc., 934 F. Supp. 55, 58 (E.D.N.Y. 1995) (granting injunction where

plaintiff claimed lost market share and goodwill); SEB S.A. v. Montgomery Ward & Co., Inc.,

77 F. Supp. 2d 399, 405 (S.D.N.Y. 1999) (granting injunction where absent relief, plaintiff

would "lose sales as well as its position as the exclusive source of 'supercool' deep fryers," a

loss that "cannot be quantified").

### ii.   Decrease in Market Share

Hutzler and defendant are direct competitors vying for the business of the same

group of customers.  See Hutzler Decl., ¶ 25.   Defendant's sale and widespread distribution of

the Infringing Products has already cost Hutzler numerous customers, including eleven major

accounts, and has possibly permanently displaced Hutzler's products in supermarkets.  Id., ¶ 32.

Defendant's actions have irreparably decreased the size of Hutzler's market share and, if not

enjoined, will continue to irreparably decrease the size of Hutzler's market share and will cost

Hutzler its position as the market leader.  Id., ¶ 29.  See Stein Indus., Inc., 934 F. Supp. at 58;

Glaxo Group Ltd. v. Apotex, Inc., 64 Fed. Appx. 751, 756 (Fed. Cir. Apr. 22, 2003)

(unpublished) (affirming granting of injunction where plaintiff showed that infringing product

"would affect not only price and profit but also cause a significant loss in market share").

### iii.    Price Erosion

Defendant's distribution of the Infringing Products, if not enjoined, will result in

irreparable price erosion of Hutzler's patented products in that Hutzler will be forced to

drastically change its pricing structure in order to compete with lower-priced "knock-off"

products.  See Hutzler Decl., ¶ 30.  See Canon, Inc. v. GCC Int'l Ltd., No. 2006-1615, 2008 WL

213883, at *4 (Fed. Cir. Jan. 25, 2008) (unpublished) ("Due to the difficulty (if not impossibility)

of determining the damages resulting from price erosion and loss of market share, an award of

money damages would not be sufficient."); Sanofi-Synthelabo v. Apotex, Inc., 470 F.3d 1368,

1382 (Fed. Cir. 2006) (district court properly found that plaintiff "would suffer irreversible price

erosion" in the absence of injunctive relief in light of evidence that plaintiff had been "forced to

offer discounted rates and price concessions"); Pharmacia & Upjohn Co. v. Ranbaxy Pharms.,

Inc., 85 Fed. Appx. 205, 215 (Fed. Cir. Dec. 23, 2003) (unpublished) (district court properly

granted injunction where plaintiff demonstrated, inter alia, "irretrievable price and market

erosion"); Purdue Pharma L.P. v. Boehringer Ingelheim GmbH, 98 F. Supp. 2d 362, 397

(S.D.N.Y. 2000) (granting preliminary injunction where effects of price erosion would be long-

lasting because of the "opposition [plaintiff] would face from its purchasers in attempting to rise its prices subsequently").

### iv.     "Market" and "Goodwill" Erosion

Defendant's distribution of the Infringing Products, because they are more cheaply constructed than Hutzler's products, has had and will continue to have an irreparable deleterious effect on customers' general goodwill towards plastic products resembling the type of produce they are designed to store.  See Hutzler Decl., ¶ 31.  See Upjohn Co. v. Medtron Labs, Inc., 751 F. Supp. 416, 430 (S.D.N.Y. 1990) (granting injunction and finding irreparable harm on the basis of contention that defendants' distribution of substandard products "could irreparably damage consumer good will towards [similar types of] product in general"); Pharmacia & Upjohn Co., 85 Fed. Appx. at 215.

### v.     Negative Effect on Sales Momentum and Profits

The popularity of the Food Saver Line (to which the infringed-upon products belong) is responsible for approximately 80 percent of Hutzler's overall sales growth in 2010 – an improvement particularly impressive considering the depressed state of the housewares market.  See Hutzler Decl., ¶ 33.  Moreover, products in the Food Saver Line often serve as "gateway" or "introductory" products in that they are the initial Hutzler products purchased by customers, who are then introduced to other Hutzler products.  Id.  Defendant's sale and distribution of the Infringing Products has had and will continue to have an irreparable deleterious effect on Hutzler's sales momentum and profits, as has already been demonstrated by Hutzler's displacement in some supermarket retailers.  See Glaxo Group Ltd., 64 Fed. Appx. at 756; SEB S.A., 77 F. Supp. 2d at 405.

vi.     **Encouragement of Further Infringement by Other Competitors**

If defendant is not enjoined from infringing the Patents, other potential competitors will be encouraged to distribute "knock-off" products resembling the Onion Saver and the Garlic Saver themselves, and will flood the market with even more cheaply-made and cheaply-priced "knock-off" products.  See Hutzler Decl., ¶ 30.  See Jacobson, 1991 U.S. Dist. LEXIS 17787, at *45.  Some of these potential competitors are Hutzler's own present customers. See Hutzler Decl., ¶ 4.

2.     *Hutzler Was Irreparably Harmed By Defendant's Unfair Competition*

Courts have recognized that unfair competition claims are not compensable by money damages because of the loss of goodwill and reputation resulting from a defendant's activities.  See National Lampoon, Inc. v. American Broadcasting Cos., 376 F. Supp. 733, 750 (S.D.N.Y. 1974), aff'd, 497 F.2d 1343 (2d Cir. 1974) (citing Omega Importing Corp. v. Petri-Kine Camera Corp., 451 F.2d 1190, 1195 (2d Cir. 1971)) (granting permanent injunction for common law unfair competition claim); see also Kraft Gen. Foods v. Allied Old English, 831 F. Supp. 123, 137 (E.D.N.Y. 2006).

 In addition, potential loss of an industry leader's present market and loss of the advantage of being the pioneer in the field, constitutes irreparable harm.  See Warner Bros., Inc. v. Gay Toys, Inc., 658 F.2d 76, 79 (2d Cir. 1981); Esbin & Alter, LLP v. Zappier, No. 08 Civ. 313, 2010 U.S. Dist. LEXIS 9487, at *6-7 (S.D.N.Y. Feb. 4, 2010) (granting preliminary injunction motion because plaintiff's "competitive position has been threatened by the ways in which the [defendant's] program has allowed [defendant] to exploit the program's functionality and [plaintiff's] proprietary expertise as embodied in the software.  That erosion will only be made worse if [defendant] is permitted to disseminate its software to other competitors.  The

threat is particularly significant given [plaintiff's] dominant position in the market over

[defendant]."); <u>Anacomp, Inc. v. Shell Knob Servs.</u>, No. 93 Civ. 4003, 1994 U.S. Dist. LEXIS

223, at *17-18 (S.D.N.Y. Jan. 7, 1994).

      As with Hutzler's patent infringement claim, Bradshaw's continued sale of its

Keeper Line will irreparably harm Hutzler's reputation and will result in loss of goodwill.

Furthermore, Hutzler is a pioneer in plastic housewares, and is an industry leader in the sale of

plastic produce containers.  <u>See</u> Hutzler Decl., ¶¶ 2, 4.  As a result of its misappropriation of

Hutzler's line of products, Bradshaw is displacing Hutzler products in supermarkets.  <u>Id.</u>, ¶¶ 20,

32.  This amounts to irreparable harm because Hutzler is losing its position as a market leader

and the advantages associated with being a pioneer in the plastic produce container field.

    **C.**    <u>**The Balance of Hardships Favors Hutzler**</u>

      *1.*    *A Balancing of Hardships Clearly Favors Hutzler With Regard to Hutzler's Patent Infringement Claims*

      Because Hutzler's business and reputation, as well as the value of its patents, will

be irreparably harmed if Bradshaw is not enjoined, money damages cannot sufficiently

compensate Hutzler for the damage caused by Bradshaw's infringing acts.  <u>Id.</u>, ¶¶ 25-37.

      In contrast, defendant will not suffer any cognizable, irreparable injury if it is

enjoined.  Defendant is not a manufacturer.  <u>Id.</u>, ¶ 14.  Defendant has not built its business

around the Infringing Products nor made a capital investment in them.  Defendant is simply an

importer and distributor of cheap foreign-made "knock-offs."  <u>Id.</u>, ¶ 15.  If enjoined from

distributing the Infringing Products, defendant will quickly find other products from other

sources to import and distribute.

      It is well-settled that "[a]n alleged infringer's loss of market share and customer

relationships, without more, does not rise to the level necessary to overcome the loss of

exclusivity experienced by a patent owner due to infringing conduct." Pfizer, Inc., 429 F.3d at

1382; accord Upjohn Co., 751 F. Supp. at 430 ("One who elects to build a business on a product

found to infringe cannot be heard to complain if an injunction against continuing infringement

destroys the business so elected."); Glaxo Group Ltd., 64 Fed. Appx. at 756 ("The district court

did not clearly err in finding that without the preliminary injunction, [plaintiff] would lose the

value of its patent while [defendant] would only lose the ability to go on to the market and begin

earning profits earlier."); SEB, S.A., 77 F. Supp. 2d at 405 (deprivation of plaintiff's "right to

exclude others from selling the patented device" outweighed effect of enjoining defendant from

selling a product "it recently has been to sell"); Canon, Inc., 2008 WL 213883, at *4 ("[T]here is

little, if any, harm that would be suffered by Defendants by virtue of an erroneous grant of a

preliminary injunction that could not be fully compensated by a money damage award against

[Plaintiff] under Fed. R. Civ. P. 65(c)."). Thus, it is manifest that balancing the parties'

respective potential hardships favors Hutzler.

> 2. *A Balancing of Hardships Clearly Favors Hutzler With Regard to Hutzler's Unfair Competition Claims*

Hutzler has devoted extensive time, labor, skills, and expenditures in developing

the Food Saver Line of products. See Hutzler Decl., ¶ 7. By producing high-quality products,

Hutzler has developed a strong reputation as the leader in storage products for produce. Id., ¶¶ 5,

26. Hutzler's business and reputation will be irreparably harmed if Bradshaw is not enjoined,

and money damages cannot sufficiently compensate Hutzler for the damage caused by

Bradshaw's infringing acts.

In contrast, defendant will not suffer any cognizable, irreparable injury if it is

enjoined. Defendant misappropriated Hutzler's designs for its Food Saver Line in bad faith,

thereby gaining an unfair advantage in the market at little to no burden or expense of

development.  If enjoined from distributing the Keeper Line, defendant will quickly find other

products from other sources to import and distribute.  Therefore, a balancing of the hardships

clearly favors Hutzler.

> **D.    The Public Interest Favors Protecting Hutzler's Patent Rights**

Even if the public policy interests supporting each side were even, a finding that

"neither party has a clear advantage" would be sufficient to sustain an injunction.  See Hybritech,

Inc. v. Abbott Labs., 849 F.2d 1446, 1457-58 (Fed. Cir. 1988).  In any event, in this case,

consideration of the public interest weighs clearly in favor of Hutzler.  It is unclear what

legitimate public interest would be served by defendant's distribution of patent-infringing

products.  Furthermore, even in cases where there might be some public interest in allowing

allegedly infringing products into the market, such as when a second generic pharmaceutical

product maker seeks to enter the market early, the "value of patent protection for the patent[s']

full term [is] more important . . . ."  Glaxo Group Ltd., 64 Fed. Appx. at 756; see also Pfizer,

Inc., 429 F.3d at 1382 ("a preliminary injunction that enforces a valid patent against an infringer

does no more than further public policy interest in the patent laws designed to encourage useful

inventions by rewarding the inventor with a limited period of market exclusivity") (citation and

quotation omitted); Sanofi-Synthelabo, 470 F.3d at 1383-84 (district court properly found that

the significant public interest in encouraging product development and protecting the

exclusionary rights conveyed in patents tipped the scales in plaintiff's favor).

## <u>Conclusion</u>

For the foregoing reasons, Hutzler respectfully requests that the Court enter an order preliminarily enjoining defendant Bradshaw from (1) infringing, or inducing infringement, of the Patents and (2) unfairly competing with the Food Saver Line, specifically, from directly or indirectly making, using, selling or offering for sale any products embodying the inventions of the Patents during their terms or the Food Saver Line, or without the express written authority of Hutzler.

New York, New York
Dated: October 20, 2011

Respectfully submitted,

CURTIS, MALLET-PREVOST,
   COLT & MOSLE LLP


By:   */s/Turner P. Smith*
     Turner P. Smith (TS 8052)
     Michael R. Graif (MG 4795)
     Nicole M. Mazanitis (NM 1983)
101 Park Avenue
New York, New York  10178
(212) 696-6000

*Attorneys for Plaintiff*

-21-