Tod S. Chasin
BUCHANAN INGERSOLL & ROONEY PC
700 Alexander Park, Suite 300
Princeton, NJ 08540
Phone: (609) 987-6802
Fax: (609) 520-0360
ATTORNEYS FOR DEFENDANT
BRADSHAW INTERNATIONAL, INC.

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| HUTZLER MANUFACTURING COMPANY, INC., )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>BRADSHAW INTERNATIONAL, INC., )<br>)<br>Defendant. ) | Civil Action No. 1:11-cv-07211 (PGG) |

**DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION**
**TO PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION**

## TABLE OF CONTENTS

NATURE AND STAGE OF THE PROCEEDINGS ...................................................1

SUMMARY OF THE ARGUMENT ........................................................................1
STATEMENT OF THE FACTS ..............................................................................2

ARGUMENT..........................................................................................................3

I.      INTRODUCTION..........................................................................................3

II.     HUTZLER HAS NO REASONABLE LIKELIHOOD OF SUCCESS ON THE
        MERITS......................................................................................................4

       A.     Bradshaw's Products Do Not Infringe Hutzler's Patents.......................4

           1.     The Law of Design Patent Infringement......................................4

                a)     The Design of the '114 Patent.........................................7
                b)     The Design of the '463 Patent.......................................11
                c)     Functionality of the Designs.........................................15

       B.     Hutzler's Patents are Invalid...............................................................17

       C.     Hutzler Has No Reasonable Likelihood of Success on the Merits of its
           Unfair Competition Claim....................................................................19

III.    HUTZLER WILL SUFFER NO IRREPARABLE HARM IF THE COURT
        DOES NOT GRANT A PRELIMINARY INJUNCTION..............................21

       A.     Reputational Harm..............................................................................21

       B.     Economic Harm...................................................................................22

       C.     Encouragement of Further Infringement by Other Competitors Price
           Erosion...............................................................................................24

IV.    THE BALANCE OF HARDSHIPS DOES NOT FAVOR AN INJUNCTION.......24

V.     THE PUBLIC INTEREST DOES NOT FAVOR A PRELIMINARY
        INJUNCTION............................................................................................25

CONCLUSION....................................................................................................25

## TABLE OF AUTHORITIES

**Cases**                                                                 **Page**

Amazon.com, Inc. v. Barnesandnoble.com, Inc., 239 F.3d 1343 (Fed. Cir. 2001)............*Passim*

Blisscraft of Hollywood v. United Plastic Co., 189 F.Supp. 333 (S.D.N.Y. 1960), aff'd, 294 F.2d 694 (2d Cir. 1961)...................................................................................18

Contessa Food Prods., Inc. v. Conagra, Inc., 282 F.3d 1370 (Fed Cir. 2002)..................5,7,11

Doninger v. Niehoff, 527 F.3d 41 (2d Cir. 2008).......................................................4

Egyptian Goddess v. Swisa, Inc., 543 F.3d 665 (Fed. Cir. 2008) (en banc)..........................5

Elmer v. ICC Fabricating, Inc., 67 F.3d 1571 (Fed. Cir. 1995)................................*Passim*

Ericsson, Inc. v. Harris Corp., 352 F.3d 1369 (Fed. Cir. 2003)......................................23

FMC Corp. v. Hennessy Indus., Inc., 836 F.2d 521 (Fed. Cir. 1987)................................5

Genentech, Inc. v. Novo Nordisk, A/S, 108 F.3d 1361 (Fed. Cir. 1997)............................4

Genesee Brewing Co. v. Stroh Brewing Co., 124 F.3d 137 (2d Cir. 1997)....................19,21

Gorham Co. v. White, 81 U.S. 511 (1872).......................................................6,11,15

In re Mann, 861 F.2d 1581 (Fed. Cir. 1988)........................................................5,7

In re Rubinfield, 270 F.2d 391 (CCPA 1959)..........................................................5

In re Seagate Tech., LLC, 497 F.3d 1360 (Fed. Cir. 2007)............................................20

Intel Corp. v. ULSI Sys. Tech., Inc., 995 F.2d 1566 (Fed. Cir. 1993)................................3

Keystone Retaining Wall Sys., Inc. v. Westrock, Inc., 997 F.2d 1444 (Fed. Cir. 1993).............5

L.A. Gear, Inc. v. Thom McAn Shoe Co., 988 F.2d 1117 (Fed. Cir. 1993)......................6,18

Lee v. Dayton-Hudson Corp., 838 F.2d 1186 (Fed. Cir. 1988)................................6,16,18

Nat'l Steel Car, Ltd. v. Canadian Pac. Ry., Ltd., 357 F.3d 1319 (Fed. Cir. 2004)...................3

New York City Triathlon, LLC v. NYC Triathlon Club, Inc., 704 F. Supp. 2d 305 (S.D.N.Y. 2010)..........................................................................................19, 21,24

Norco Prods., Inc. v. Mecca Dev., Inc., 617 F. Supp. 1079 (D. Conn. 1985).......................19

Nutrition 21 v. U.S., 930 F.2d 867 (Fed. Cir. 1991)…………………………………………..23

Polymer Tech., Inc., v. Bridewell, 103 F.3d 970 (Fed. Cir. 1996)………………………………24

SK Greenwich LLC v. W-D Group, 2010 U.S. Dist. LEXIS 112655 (S.D.N.Y. 2010)………….4

Titan Tire Corp. v. Case New Holland, Inc., 566 F.3d 1372 (Fed. Cir. 2009)………………17,18

Upjohn Co. v. Medtron Labs., Inc., 751 F. Supp. 416 (S.D.N.Y. 1990)………………………….3

Winter v. NRDC, Inc., 555 U.S. 7 (2008)……………………………………………………3, 21

Wisdom Imp. Sales, Co., LLC v. Labatt Brewing Co., Ltd., 339 F.3d 101 (2d Cir. 2003)……...22

| **Statutes** | **Page** |
| --- | --- |
| 35 U.S.C. §171………………………………………………………………………………...17 |
| 35 U.S.C. § 282…………………………………………………………………………………17 |
| 35 U.S.C. § 283……………………………………………………………………………………3 |

| **Federal Rules** | **Page** |
| --- | --- |
| Fed. R. Civ. P. 65……………………………………………………………………………...3 |

## NATURE AND STAGE OF THE PROCEEDINGS

Plaintiff Hutzler Manufacturing Company, Inc. ("Hutzler") commenced this action on October 13, 2011, alleging *inter alia* that defendant Bradshaw International, Inc. ("Bradshaw") infringes U.S. Patent Nos. D538,114 ("the '114 Patent") and D592,463 ("the '463 Patent"). Hutzler further alleges that Bradshaw has tortiously interfered with its business and unfairly competed with Hutzler under New York law.  Hutzler filed its Motion for a Preliminary Injunction and Memorandum of Law in Support of Plaintiff's Motion for a Preliminary Injunction on October 20, 2011. Bradshaw filed its Answer, Affirmative Defenses and Counterclaims on November 4, 2011. This Memorandum responds to Hutzler's pending Motion for a Preliminary Injunction.

## SUMMARY OF THE ARGUMENT

Hutlzer's Motion for a Preliminary Injunction should be denied for the following reasons:

1.      Hutzler has not met its burden to clearly show that it has a reasonable likelihood of success on the merits of its infringement claims with regard to either the '114 Patent or '463 Patent under the appropriate "ordinary observer" test; and, Bradshaw has raised substantial questions as to the validity of the '114 and '463 Patents.

2.      Hutzler has not met its burden to show a clear likelihood of success of success on the merits of its unfair competition claim or a balance of hardships that is decidedly in its favor.

3.      Hutzler has not met its burden to make a clear showing that it will be subject to "irreparable harm" that is imminent and actual, and cannot be compensated by monetary damages if a preliminary injunction is not issued.

Accordingly, Hutzler has failed to carry its burden on the required factors in order to warrant the extraordinary remedy of a preliminary injunction. Bradshaw's accused products do not infringe the '114 or '463 Patents, and Bradshaw has not unfairly competed with Hutzler.

## STATEMENT OF THE FACTS

Bradshaw's product line of kitchen utensils and home products includes more than 2,400 different items and is constantly changing. Megorden Aff. ¶ 2. It is Bradshaw's policy to investigate whether products of other parties in the marketplace are protected by United States patent protection before Bradshaw markets similar new products, as Bradshaw takes very seriously the patent and other intellectual property rights of others, as well as its own. Id. at ¶ 3. Thus, while Bradshaw was aware of the Hutzler garlic saver and onion saver products and the '114 and '463 Patents, which allegedly cover those products, before designing the accused products, Bradshaw took significant efforts to design products which do not infringe those patents. Id. at ¶ 5.

Further, Bradshaw also obtained an opinion from its United States intellectual property counsel regarding the issue of infringement of the Hutzler's patents at issue and relied upon that opinion in proceeding with the marketing of the accused products. Id. at ¶ 6. The accused Bradshaw products, which it sells under its registered PROFRESHIONALS trademark, are of at least of comparable quality, and, in fact, Bradshaw believes its product to be superior in quality to Hutzler's. Id. at ¶ 11. As to price, Bradshaw generates reasonable margins but has no control over the final retail price. Id.

Bradshaw has commercial arrangements with supermarket retailers, which vary widely, but in no instance does Bradshaw pay an annual fee to a supermarket retailer to have exclusive rights to space. Id. at ¶ 8. Moreover, Bradshaw is not the only party selling food saver products,

including garlic saver and onion saver products in competition with the Hutzler products; therefore, Hutzler's decline in sales cannot be attributed soley to Bradshaw's presence in the market. Id. at ¶ 9-10.

## ARGUMENT

### I.  INTRODUCTION

Hutzler seeks an injunction under Fed. R. Civ. P. 65 and 35 U.S.C. § 283. Accordingly, "[t]he law of the Court of Appeals for the Federal Circuit governs the determination of whether a preliminary injunction should issue." Upjohn Co. v. Medtron Labs., Inc., 751 F. Supp. 416, 421-22 (S.D.N.Y. 1990). A preliminary injunction is a "drastic and extraordinary remedy that is not to be routinely granted." Nat'l Steel Car, Ltd. v. Canadian Pac. Ry., Ltd., 357 F.3d 1319, 1324 (Fed. Cir. 2004) (citing Intel Corp. v. ULSI Sys. Tech., Inc., 995 F.2d 1566, 1568 (Fed. Cir. 1993)). In order to obtain a preliminary injunction, Hutzler must establish the following by a clear showing: "(1) a reasonable likelihood of success on the merits; (2) irreparable harm if an injunction is not granted; (3) a balance of hardships tipping in its favor; and (4) the injunction's favorable impact on the public interest." Amazon.com, Inc. v. Barnesandnoble.com, Inc., 239 F.3d 1343, 1350 (Fed. Cir. 2001).

"Case law and logic both require that a movant cannot be granted a preliminary injunction unless it establishes both of the first two factors, i.e., likelihood of success on the merits and irreparable harm." Id. (internal citations omitted).

Further, to obtain a preliminary injunction with respect to its unfair competition claim, Hutzler must also establish the four factors listed above under Amazon. See Winter v. NRDC, Inc., 555 U.S. 7, 21 (2008). However, notwithstanding the Supreme Court's decision in Winter, the Second Circuit has allowed parties to obtain a preliminary injunction if the moving party

establishes the following: "(1) a likelihood of irreparable harm in the absence of the injunction; and (2) either a likelihood of success on the merits or sufficiently serious questions going to the merits to make them a fair ground for litigation, with a balance of hardships tipping decidedly in the movant's favor." SK Greenwich LLC v. W-D Group, 2010 U.S. Dist. LEXIS 112655, 6 (S.D.N.Y. 2010) (quoting Doninger v. Niehoff, 527 F.3d 41, 47 (2d Cir. 2008) (The court nonetheless emphasized that preliminary injunctions should be issued cautiously, and that "regardless of the applicable standard, the movant bears the burden of proving that an injunction is warranted." (internal citations omitted))). Hutzler has not met its burden under either standard.

## II. HUTZLER HAS NO REASONABLE LIKELIHOOD OF SUCCESS ON THE MERITS

In order to make a clear showing of a likelihood of success on the merits, Hutzler must establish that, in light of the presumptions and burdens that will adhere at trial on the merits, (1) Hutzler will likely prove that Bradshaw infringes the '114 and '463 Patents, and (2) Hutzler's infringement claim will likely withstand Bradshaw's challenges to the validity of the patents. Amazon, 239 at 1350 (citing Genentech, Inc. v. Novo Nordisk, A/S, 108 F.3d 1361, 1364 (Fed. Cir. 1997)). Therefore, if Bradshaw raises a substantial question as to either infringement or validity, the preliminary injunction should not issue. Genentech, 108 F.3d at 1364.

### A.    Bradshaw's Products Do Not Infringe Hutzler's Patents

#### 1.    The Law of Design Patent Infringement

The first step in an analysis of design patent infringement is to determine the scope of the claim. "Determining whether a design patent claim has been infringed requires, first, as with utility patents, that the claim be properly construed to determine its meaning and scope." Elmer v. ICC Fabricating, Inc., 57 F.3d 1571, 1577 (Fed. Cir. 1995). When construing the claim of a design patent, it is important to consider that "[a] patented design is defined by the drawings in

the patent, not just by one feature of the claimed design." <u>Keystone Retaining Wall Sys., Inc. v.</u> <u>Westrock, Inc.</u>, 997 F.2d 1444, 1450 (Fed. Cir. 1993). "Design patents have almost no scope. The claim … in all design cases, is limited to what is shown in the application drawing." <u>In re</u> <u>Mann</u>, 861 F.2d 1581, 1582 (Fed. Cir. 1988).

The second step in an analysis of design patent infringement is a comparison of the patented design with the alleged infringing design. "The claim as properly construed must be compared to the accused design to determine whether there has been infringement." <u>Elmer</u> at 1577.

In its "Memorandum of Law in Support of Plaintiff's Motion for Preliminary Injunction" ("Hutzler's Memo."), Hutzler refers to the law as it stood prior to the Federal Circuit decision in <u>Egyptian Goddess v. Swisa Inc.</u>, 543 F.3d 665 (Fed. Cir. 2008) (en banc). However, the <u>en banc</u> decision in <u>Egyptian Goddess</u> changed the test for design patent infringement. In view of the decision in <u>Egyptian Goddess,</u> there is only a one-part test for design patent infringement, i.e. the "ordinary observer" test. In the "ordinary observer" test, the court compares the accused device with the drawings of the patent through the eyes of the ordinary observer. "[D]ifferences between patented and accused designs are not irrelevant. Courts should take into account similarities <u>and</u> differences" in determining whether or not consumer deception could occur. <u>FMC Corp. v. Hennessy Indus., Inc.</u>, 836 F.2d 521, 527 (Fed. Cir. 1987).

In <u>Contessa Food Products, Inc. v. Conagra, Inc.</u>, 282 F.3d 1370, 1378 (Fed Cir. 2002), the Federal Circuit stated the following:

> It has been consistently held for many years that it is the appearance of a design as a whole which is controlling in determining questions of … infringement." <u>In re</u> <u>Rubinfield</u>, 270 F.2d 391, 395, 123 USPQ 210, 214 (CCPA 1959). Our precedent makes clear that all of the ornamental features illustrated in the figures must be considered in evaluating design patent infringement…In particular, in the "ordinary observer" analysis, the patented design is viewed in its entirety, as it is

claimed. <u>L.A. Gear, Inc. v. Thom McAn Shoe Co.</u>, 988 F.2d 1117, 1125, 25 USPQ2d 1913, 1918 (Fed. Cir. 1993).

<u>Id.</u>

One case which interprets the "ordinary observer" test for infringement is <u>Lee v. Dayton-Hudson Corp.</u>, 838 F.2d 1186 (Fed. Cir. 1988). The <u>Lee</u> patented design, the two alleged infringing designs, and the prior art are shown in Exhibit A of the Declaration of Robert J. Kenney ("Kenney Decl.").

In <u>Lee</u>, the Court correctly focused on the ornamentation of the massagers, and specifically the differences in their appearances. The Federal Circuit affirmed the lower court, stating that "the differences in appearance between [the patented] design and the accused devices are sufficient to make apparent to an ordinary observer that one design is not the other." <u>Id.</u> at 1189. The Court noted that "[d]esign patents do not and cannot include claims to the structural or functional aspects of the article." <u>Id.</u> A design that "copies the utilitarian or functional features of a patented design is not an infringement unless the ornamental aspects are also copied, such that the overall 'resemblance is such as to deceive'." <u>Id.</u> at 1189 (quoting <u>Gorham</u>, 81 U.S. 511, 528 (1872)).

An additional case that considered the ordinary observer test is <u>Elmer v. ICC Fabricating, Inc.</u>, 57 F.3d 1571 (Fed. Cir. 1995). In <u>Elmer</u>, the Federal Court considered the claim of United States Design Patent No. 290,620, which is reproduced in Exhibit B of the Kenney Decl. The accused design and the closest prior art are also reproduced in Exhibit B, in order from left to right. The defendant in <u>Elmer</u> argued that there were two differences between the patented design and the accused design. First, "the protrusion that extends above the upper surface of the '620 sign, and the triangular vertical ribs that extend along the '620 sign's side edges." <u>Id.</u> at

1577. Since these features were not appropriated, the defendant argued that there was no infringement of the design patent claim as a matter of law.  Id. at 1576.

The plaintiff in Elmer argued that both the upper protrusion and the vertical ribs were functional, not ornamental features and therefore, these features should not be considered.

The court in Elmer stated the following:

> Each of the patent's six drawing figures shows a sign having these features, which give the sign a distinctive ornamental appearance.  No other design is disclosed or suggested in the '620 Patent. If, as HTH now contends, the vertical ribs and upper protrusion were functional, not ornamental, features, HTH could have omitted these features from its patent application drawings. HTH did not do so, however, and thus effectively limited the scope of its patent claim by including those features in it. See In re Mann, 861 F.2d 1581, 1582, 8 USPQ2d 2030, 2031 (Fed. Cir. 1988) ('Design patents have almost no scope. The claim at bar, as in all design cases, is limited to what is shown in the application drawings.')

Id. at 1577. Taking the above into consideration, Bradshaw asserts that the designs of the '114 and '463 Patents under consideration and the accused Bradshaw products would not be considered "substantially the same" to an ordinary observer.

### a.  The Design of the '114 Patent

The '114 Patent includes 3 figures, which are directed to the ornamental design of an onion container, as shown and described. In Hutzler's Memo., only Figure 2 of the '114 Patent has been considered and compared with a side view of the Bradshaw onion keeper. As mentioned above, in the Contessa case, it was held that "the 'ordinary observer' analysis is not limited to the ornamental features of a subset of the drawings, but instead must encompass the claimed ornamental features of all figures of a design patent." 282 F.3d at 1379. Since Hutzler has not considered all of the views of the '114 Patent, Bradshaw submits that this is clear legal error, and therefore the motion for preliminary injunction must fail.

In any event, Bradshaw considers all of the figures of the patent below for completeness. Figure 1 of the '114 Patent, which is a top view of the onion container, has been and a picture of the top of the Bradshaw onion keeper have been reproduced in Exhibit C of the Kenney Decl. As can be seen from Figure 1 of the '114 Patent, the onion container of the '114 the outside circumference of the onion container is a perfect circle. In addition, the onion container includes a surface texture that looks like the skin of an onion and is solid, not transparent. This surface texture is uneven and arbitrary, but includes generally radially extending lines in the top view that converge at a center of the circular onion container. The center of the onion container also includes a very narrow top or tip surface.

The outside circumference of the Bradshaw onion keeper is not a perfect circle, but has a scalloped edge in top view. In addition, in the Bradshaw onion keeper, the top view clearly shows that the material is transparent, not solid as in Figure 1 of the '114 Patent and does not resemble an onion at all. This provides a very different "look" to the Bradshaw onion keeper, since the internal surfaces of the onion keeper are visible through the top. The Bradshaw onion keeper has a smooth surface, except for the twelve (12) very distinctive, radially extending indentations. Finally, the Bradshaw onion keeper has a very wide top or tip surface, which, due to the converging of the twelve (12) indentations, the top or tip surface is circular, but is not a perfect circle, having a scalloped edge similar to the outside circumference of the Bradshaw onion keeper.

In Figure 2 of the '114 Patent, and the photograph of the side of the Bradshaw onion keeper, which have been reproduced in Exhibit D of the Kenney Decl., the overall appearance of the design of the '114 Patent and the Bradshaw onion keeper are not the same. Figure 1 of the '114 Patent includes a surface texture that looks like the skin of an onion. This surface texture is

uneven and arbitrary. In Figure 2 of the '114 Patent, the surface texture includes generally vertically extending lines in the center, and angled lines at the opposite sides that converge at a top center of the circular onion container. The center of the onion container is very narrow on the top, so that the surface texture comes to a point. There is also a separation at the vertical midsection of the onion container. The surface texture above the separation and below the separation is generally continuous, and the material is clearly solid, not transparent.

The overall appearance of the Bradshaw onion keeper is quite different. As mentioned above, there is no surface texture that looks like the outside of a real onion. Of the 12 vertical indentations in the Bradshaw onion keeper, in any side view, there are only 4-6 that are ever visible. These indentations are very recognizable when viewing the side of the Bradshaw onion keeper, in stark distinction to the 28 or more arbitrary lines that appear in Figure 2 of the onion container of the '114 Patent. The Bradshaw onion keeper also has a very thick top, and the angle of the top from horizontal is not the same as in Figure 2 of the '114 Patent.

The Bradshaw onion keeper includes a separation point where an ordinary observer would recognize one of the biggest differences between the design of the '114 Patent and the Bradshaw onion keeper; namely that the Bradshaw onion keeper above the separation is transparent, whereas the bottom below the separation is solid, providing a very different "look" to the Bradshaw onion keeper. The top portion provides a reflection back to the ordinary observer, while also allowing the rear part of the onion keeper to be seen through the surface of the front part, providing a two-toned appearance to the Bradshaw onion keeper, which does not have the appearance of the skin of an onion, as in the design of the '114 Patent.

The numerous vertical lines in the design of the '114 Patent provide a completely different overall appearance to the onion container when compared to the Bradshaw onion

keeper. As in the Elmer case mentioned above, since vertical lines are included in the drawings, their effect on the overall appearance must be considered. Since the Bradshaw onion keeper does not include these numerous vertical lines, which provide the appearance of the skin of an onion, the overall appearance of the Bradshaw onion keeper is not the same as the overall appearance of the '114 Patent.

Figure 3 of the '114 Patent and a photograph of the bottom of the Bradshaw onion keeper have been reproduced as Exhibit E of the Kenney Decl. The surface texture in Figure 3 of the '114 Patent looks like the skin of an onion and the outer circumference is a perfect circle. In addition, Figure 3 of the '114 Patent appears to include a gradually curving surface from the sides to the bottom, until the bottom center ultimately becomes flat. The sides of the onion container curve downwardly on the outside (see Figure 2), and then have a more abrupt curve at the bottom, but there is no clear line of demarcation between the side walls and the bottom wall, as seen in the partial concentric circles shown surrounding the center of the bottom in Figure 3 of the '114 Patent.

Referring to the photograph of the bottom of the Bradshaw onion keeper, the surface texture is also not present, and the outer circumference is generally circular, but also has a scalloped edge. In addition, there is a ridge formed at a spaced location from the center of the onion keeper. This ridge is formed from a recessed bottom. In addition, there is a narrow portion outside of the ridge, which is flat, and then gradually curves into the side walls (see Figure 2 of the Bradshaw onion keeper). In view of this, the bottom of the Bradshaw onion keeper is very different from Figure 3 of the '114 Patent.

Clearly, the overall appearance of the Bradshaw onion keeper is very different from the entire design of the onion container in Figures 1-3 of the '114 Patent. Therefore, Bradshaw

respectfully submits that an ordinary observer would <u>not</u> consider the two designs to be "substantially the same," as would be required to meet "ordinary observer" test for design patent infringement. <u>Gorham</u>, 81 U.S. at 528. Therefore, such an observer would not be deceived to purchase the Bradshaw onion keeper, supposing it to be the design of the '114 Patent.

### b.   The Design of the '463 Patent

The '463 Patent includes 8 figures directed to the ornamental design of a garlic container. In the Hutzler Memo. only Figure 3 of the '463 Patent has been considered and compared with a side view of the Bradshaw garlic keeper. As mentioned above, in the <u>Contessa</u> case, it was held that "the 'ordinary observer' analysis is not limited to the ornamental features of a subset of the drawings, but instead must encompass the claimed ornamental features of all figures of a design patent." 282 F.3d at 1379. Since Hutzler has not considered all of the views of the '463 Patent, Bradshaw submits that this is clear legal error, and therefore the motion for preliminary injunction must fail.

Nevertheless, Bradshaw will consider all of the figures of the '463 Patent below.

Figure 2 of the '463 Patent, which is a top view of the garlic container, and a picture of the top of the Bradshaw garlic keeper have been reproduced in Exhibit F of the Kenney Decl. While the garlic container of the '463 Patent is generally circular in top view, the outside circumference of the garlic container is not a perfect circle, but rather has a diameter which changes around the entire circumference in an arbitrary manner. In addition, the garlic container includes a surface texture that is non-transparent, and looks like the skin of a piece of garlic and includes radially extending that terminate at a spaced location from the center of the garlic container. The center of the garlic container also includes a top or tip surface that is a perfect circle in the top view.

Referring to the top view of the Bradshaw garlic keeper, while it is generally circular, the outside circumference is not a perfect circle, but has a scalloped edge, and, most notably, is also symmetric, not arbitrary. In addition, in the Bradshaw garlic keeper, the top view clearly shows that the material is transparent, not solid as in Figure 2 of the '463 Patent. This provides a very different "look" to the Bradshaw garlic keeper, since the internal surfaces of the garlic keeper are visible through the top, and do not resemble the skin of a piece of garlic. The Bradshaw garlic keeper has a smooth surface, except for the eight (8) very distinctive, radially extending indentations. These indentations extend to and converge at the tip or top of the Bradshaw garlic keeper, and are not spaced therefrom as in Figure 2 of the '463 Patent. Actually, the indentations do not resemble a piece of garlic at all, as a real piece of garlic is not smooth with radial indentations as is the Bradshaw garlic keeper. Finally, the Bradshaw garlic keeper has a top or tip surface, which, due to the converging of the eight (8) indentations, the top or tip surface is circular, but is not a perfect circle, having a scalloped edge similar to the outside circumference of the Bradshaw garlic keeper.

Referring to Figures 3-6 of the '463 Patent the overall appearance of the design of the '463 Patent and the Bradshaw garlic keeper are not the same. The '463 patent garlic container includes a surface texture that is uneven and arbitrary; looks like the skin of a piece of garlic, and includes generally vertically extending lines in the center, and angled lines at the opposite sides that converge toward the top or tip of the circular garlic container.  However, the lines are spaced substantially from the top or tip of the garlic container. The top or tip of the garlic container is angled at a very steep angle. Also, the surface texture above the separation and below the separation is generally continuous, and the material is clearly solid, not transparent. Finally, there

12

are apertures formed near the bottom of the garlic container in each of Figures 3-6 of the '463 Patent.

In the Bradshaw garlic keeper there is no surface texture that looks like the outside of a real piece of garlic and there are eight (8) vertically extending indentations in the entire Bradshaw garlic keeper. In any side view, there are only 3-4 that are ever visible. This is in stark distinction to the twenty (20) or more arbitrary lines that appear in the side views of the garlic container of the '463 Patent. The Bradshaw garlic keeper top or tip does not include the distinctive angle that is present in the side views of the '463 Patent, and the Bradshaw garlic keeper is symmetric. Therefore, it is the same from the side no matter which direction it is viewed. The garlic container of the '463 Patent, with its arbitrary vertical lines and slanted top are different in each of the side views (Figures 3-6).

The Bradshaw garlic keeper also includes a separation point where an ordinary observer would recognize one of the biggest differences between the design of the '463 Patent and the Bradshaw garlic keeper. Specifically, the top of the Bradshaw garlic keeper above the separation is transparent, whereas the bottom below the separation is solid. This difference of material provides a very different "look" to the Bradshaw garlic keeper. The top portion provides a reflection back to the ordinary observer, while also allowing the rear part of the garlic keeper to be seen through the surface of the front part. Also, the dramatic difference between the top and bottom portions of the Bradshaw garlic keeper provides a two-toned appearance to the Bradshaw garlic keeper, which does not have the appearance of the skin of a piece of garlic, as in the design of the '436 Patent.

The same reasoning would apply to the perspective view (Figure 1) of the '463 Patent, which is reproduced in Exhibit H of the Kenney Decl.

A bottom view (Figure 7) of the '463 Patent, and a photograph of the bottom of the Bradshaw garlic keeper, have been reproduced in Exhibit I of the Kenney Decl. In Figure 7 of the '463 Patent, the same visual appearances mentioned above with regard to the other figures of the '463 Patent are also present. Specifically, the surface texture in Figure 7 of the '463 Patent looks like the skin of a piece of garlic and the outer circumference is random and arbitrary. In addition, Figure 7 of the '463 illustrates that there are five (5) tear drop shaped holes formed in the bottom of the garlic container. Finally, there is no clear line of demarcation between the side walls and the bottom wall.

In the Bradshaw garlic keeper, the surface texture is also not present, and the outer circumference is generally circular, but also has a scalloped edge. In addition, there is a ridge formed at a spaced location from the center of the garlic keeper. This ridge is formed from a recessed bottom. In addition, there is a narrow portion outside of the ridge which is flat, and then gradually curves into the side walls. Furthermore, there are only four (4) rectangularly shaped holes in the bottom. These holes are less in number and are also a completely different shape from the tear drop shaped holes in Figure 7 of the '436 Patent. In addition, the holes are spaced around the center of the Bradshaw garlic keeper, so that there are two (2) pairs of holes, which if extended would form a cross.

In view of the above differences, Bradshaw respectfully submits that the bottom of the Bradshaw garlic keeper is completely different from Figure 7 of the '463 Patent.

Figure 8 of the '463 Patent, and a photograph of an inside of the Bradshaw garlic keeper, have been reproduced in Exhibit J of the Kenney Decl. In Figure 8 of the '463 Patent, in addition to the five (5) holes mentioned above with regard to Figure 7, there is a very distinctive design in the center of the garlic container. Specifically, the design includes surface texturing with a

14

picture of what appears to represent a piece of garlic. In the Bradshaw garlic container; however, there is surface texturing, but this surface texturing is a series of broken concentric circles. In addition, there are the four (4) holes that are arranged in two (2) opposite pairs. This design and arrangement of holes provides a very different "look" to the Bradshaw garlic container.

In view of the above, Bradshaw respectfully submits that the overall appearance of the Bradshaw garlic keeper is very different from the entire design of the garlic container in Figures 1-8 of the '463 Patent. Therefore, an ordinary observer would <u>not</u> consider the two designs to be "substantially the same," as would be required to meet "ordinary observer" test for design patent infringement.  <u>Gorham</u>, 81 U.S. at 528. Therefore, such ordinary observer would not be deceived to purchase the Bradshaw garlic keeper, supposing it to be the design of the '463 Patent.

**c.**      **<u>Functionality of the Designs</u>**

Bradshaw submit that the <u>Lee</u> case mentioned above supports its position that the designs of the '114 and '463 Patents and the Bradshaw onion keeper and garlic keeper are not substantially similar. The Bradshaw onion keeper and garlic keeper have similar features to the onion container of the '114 Patent and the garlic container of the '463 Patent; however, these similar features are due to the functional requirements of the device. It is the ornamental aspects of each of the features that must be considered in the "ordinary observer" test.

In addition to relying on an improper standard for design patent infringement, Hutzler has also focused its argument on unprotected, functional elements of its products. It is the "bulbous shape", the "round bottom with a flattened base" and the "line across the product at approximately halfway from its top" that Hutzler argues are the similarities that "demonstrate infringement" of the '114 Patent. Hutzler Memo. at 8-9. Similarly, Hutzler identifies the "shape", the "round bottom with a flattened base", the "line across the product at approximately two-

15

thirds from its top" and the "slits on its base" as demonstrating infringement of the '463 patent. Id. at 9.

Taking the "line across the product", although there is a separation at the vertical midsection in the Bradshaw onion keeper and garlic keeper, this separation is a functional aspect of the design, since there must be a separation in order to open the container to gain access to the inside of the container. The most likely location to place the separation is at the midsection, since this is the widest part of the container, and therefore serves a function of allowing the wide4st access to insert and remove items. This functional element is not protected by Hutlzer's design patents.  See Lee, 838 F.2d at 1188. It is only the ornamental appearance that is protected. Therefore, the similarity of the location of this separation should not be considered when determining the overall appearance of the Bradshaw product to the '114 Patent.

In addition, an onion container and a garlic container in and of themselves are functional. In order for an onion container to be an onion container or a garlic container to be a garlic container, it should have the general size and shape of an onion or a piece of garlic. Bradshaw respectfully submits that the only similarity between the onion container of the '114 Patent and the Bradshaw onion keeper and the garlic container of the '463 Patent and the Bradshaw garlic keeper is the general size and shape. However, the surface texture of the onion container of the '114 Patent also looks like an onion, while the Bradshaw onion keeper does not really look like an onion (other than the shape and size). An onion does not have a scalloped outer surface and does not have a two-toned appearance. In addition, the garlic container of the '463 Patent also does not look like a piece of garlic. A piece of garlic does not have such distinctive vertical separations as in the Bradshaw garlic keeper. There is an outside skin on a piece of garlic that looks like the outside surface of the garlic container of the '463 Patent. In view of this, Bradshaw

respectfully submits that the "ordinary observer" test is not met in the present situation due to the functionality of the designs in the '114 and '463 Patents.

As a result of the above analysis of the patents and accused products under the "ordinary observer" test and the functionality of Hutzler's designs, Hutzler has no reasonable likelihood of success on the merits of its infringement claims, which is required in order to obtain a preliminary injunction. See Amazon, 239 F.3d at 1350. Bradshaw has, at a minimum, raised a substantial question as to the likelihood of success on the merits with regard to infringement, i.e. Bradshaw has asserted an infringement defense that Hutzler cannot prove "lacks substantial merit;" thus, the preliminary injunction should not issue. Id. at 1350-1351 (internal citation omitted).

**B.      Hutzler's Patents are Invalid**

Since Hutzler cannot establish a likelihood of success as to its infringement claims, it is irrelevant whether those claims can withstand Bradshaw's challenges to the validity of the patents. However, Bradshaw nonetheless asserts that Hutzler's '114 and '463 Patents are invalid as they are primarily functional rather ornamental under § 171.

While Hutzler's Patents enjoy the presumption of validity under 35 U.S.C. § 282 at the preliminary injunction stage, Hutzler is incorrect in stating that the "clear and convincing" standard applies to Bradshaw at this stage. See Titan Tire Corp. v. Case New Holland, Inc., 566 F.3d 1372, 1376-77 (Fed. Cir. 2009). The question is not whether Bradshaw can prove that the patents are invalid by "clear and convincing" evidence, as it would be at trial, but rather "whether it is more likely than not that the challenger will be able to prove at trial, by clear and convincing evidence, that the patent is invalid." Id. at 1379-80 ("We reiterate that the 'clear and convincing' standard regarding the challenger's evidence applies only at trial on the merits, not

at the preliminary injunction stage…it is not an evidentiary burden to be met preliminarily by the challenger.") Thus, once Bradshaw presents persuasive evidence of invalidity, Hutzler then has the burden of persuading the court that it is nevertheless likely to succeed at trial on the issue of validity. Id. at 1377.

Bradshaw asserts that the '114 and '463 Patents are invalid because their ornamental feature or design is "merely a by-product" of functional and mechanical considerations dictating the design. Blisscraft of Hollywood v. United Plastic Co., 189 F.Supp. 333, 337 (S.D.N.Y. 1960), aff'd, 294 F.2d 694 (2d Cir. 1961). To be patentable, a design must be "primarily ornamental." L.A. Gear, 988 F.2d at 1123. The court in L.A. Gear defined the standard as follows:

> [i]n determining whether a design is primarily functional or primarily ornamental the claimed design Is [sic] viewed in its entirety, for the ultimate question is not the functional or decorative aspect of each separate feature, but the overall appearance of the article, in determining whether the claimed design is dictated by the utilitarian purpose of the article.

Id. (citing Lee, 838 F.2d at 1189).

With regard to the '114 Patent and the Onion Saver, Hutzler asserts that Bradshaw has infringed the '114 Patent because its design is "substantially similar" to the following elements of the patented design: "bulbous shape", the "round bottom with a flattened base" and the "line across the product at approximately halfway from its top". Hutzler Memo. at 8-9. Each of these features is basically functional as discussed above. The shape is dictated by the shape of the produce that is intended to be stored inside. If these elements make up the visual appearance of the design as a whole, such that copying such elements amounts to infringement, then, despite some additional ornamentation, the overall appearance of the design is "primarily functional"

and not "primarily ornamental" and thus not patentable.  See Norco Prods., Inc. v. Mecca Dev., Inc., 617 F. Supp. 1079, 1080 (D. Conn. 1985).

The same is true of the '463 Patent and the Garlic Saver for which Hutzler asserts Bradshaw's accused product design is "substantially similar" to the "appearance as a whole" due to copying of the following elements of the patented design: "shape", the "round bottom with a flattened base", the "line across the product at approximately two-thirds from its top" and the "slits on its base" as demonstrating infringement of the '463 patent. Hutzler Memo. at 9.

Due to the primarily functional nature of the elements making up the claimed "ornamental design for the Hutzler products, Hutzler has no reasonable likelihood of success on the issue of validity, which is required in order to obtain a preliminary injunction. See Amazon, 239 at 1350. Bradshaw has, at a minimum, raised a substantial question as to the likelihood of success on the merits with regard to validity, i.e. Bradshaw has asserted a evidence of invalidity that Hutzler cannot prove "lacks substantial merit;" thus, the preliminary injunction should not issue. Id. at 1350-1351 (internal citation omitted).

### C.      Hutzler Has No Reasonable Likelihood of Success on the Merits of its Unfair Competition Claim

In order to establish a likelihood of success on the merits of its unfair competition claim, Hutzler "must demonstrate: 1) a likelihood of confusion; and 2) the defendant's bad faith." New York City Triathlon, LLC v. NYC Triathlon Club, Inc., 704 F. Supp. 2d 305, 325 (S.D.N.Y. 2010) (internal citations omitted); see also Genesee Brewing Co. v. Stroh Brewing Co., 124 F.3d 137, 142 (2d Cir. 1997).

Hutzler has asserted no evidence of actual consumer confusion and the evidence does not support a finding of likelihood of confusion. As made apparent by the comparison of the products above, there are significant differences in the overall appearance of the products, and

any similarity in shape or size are dictated by the functional need to conform to the size and shape of the object intended to fit it the container. Consumers are not likely to be confused as to the origin of product elements dictated by function. One of the primary differences between the products is in color. The Hutzler product is a single, opaque tone; however, the accused Bradshaw products are two-toned including a transparent top half, which allows the consumer to see the contents of the container. Hutzler asserts that Bradshaw has taken no steps to differentiate itself from Hutzler in the marketing and advertisement of its products and thus intends to pass off its goods as those of Hutzler. Hutzler Memo. at 12. Hutzler offers no evidence of this. In addition to the differences in the appearance of the products themselves, Bradshaw's labels, packaging and advertising bear no resemblance to those of Hutzler. Bradshaw's products are being marketed and sold under its PROFRESHIONALS trademark, which is clearly visible on its label.

As a result, Hutzler can show no evidence of attempts by Bradshaw to mislead the public. Additionally, Hutzler cannot meet its burden to establish bad faith intent on the part of Bradshaw. In support of bad faith, Hutzler asserts only that its counsel advised Bradshaw of Hutzler's rights in and to the '114 and '463 Patents. Id. Bradshaw took significant efforts to design products which do not infringe those patents as is its policy. Megorden Aff. ¶ 3,5. Specifically, in this case Bradshaw also obtained an opinion from its United States intellectual property counsel regarding the issue of infringement of the Hutzler patents in issue and relied upon that opinion in proceeding with the marketing of the accused products. Id. at ¶ 6. As a result, Bradshaw has not acted in bad faith. See e.g. In re Seagate Tech., LLC, 497 F.3d 1360, 1369 (Fed. Cir. 2007) ("In light of the duty of due care, accused willful infringers commonly assert an advice of counsel defense. Under this defense, an accused willful infringer aims to establish that due to reasonable reliance on advice from counsel, its continued accused activities

were done in good faith. Typically, counsel's opinion concludes that the patent is invalid, unenforceable, and/or not infringed. Although an infringer's reliance on favorable advice of counsel, or conversely his failure to proffer any favorable advice, is not dispositive of the willfulness inquiry, it is crucial to the analysis." (internal citations omitted)).  A state law claim of unfair competition is not viable without a showing of bad faith. Genesee, 124 F.3d at 149.

Having failed to establish either a likelihood of confusion or bad faith on the part of Bradshaw, Hutzler has no reasonable likelihood of success on the merits of its unfair competition claim and has not shown that the extraordinary remedy of preliminary injunction is warranted.

## III.   HUTZLER WILL SUFFER NO IRREPARABLE HARM IF THE COURT DOES NOT GRANT A PRELIMINARY INJUNCTION

As with the issue of invalidity, because Hutzler cannot establish that it has a likelihood of success on the merits of its infringement claims, which is required in order to obtain a preliminary injunction, it is irrelevant whether it may be "irreparably" harmed by having to fairly compete with Bradshaw's products. Nonetheless Bradshaw addresses the issue below. In order to show "irreparable harm", Hutzler must show that it is likely to suffer an "irreparable injury" that is "'likely in the absence of an injunction'; it is not enough for a plaintiff to face some "possibility' of irreparable harm."   New York City Triathlon, 704 F. Supp. 2d at 313 (citing Winter, 555 U.S. at 21).

### A.   Reputational Harm

Hutzler has submitted no evidence of prior actual confusion and has no evidence supporting its assertion of reputational harm. Hutzler has submitted evidence only of its alleged reputation as a "pioneer" in the housewares industry and of the alleged quality and uniqueness of its products. Hutzler Memo. at 2, 14, 18, 19. However, Hutzler provides no evidence suggesting

that consumers' perceptions of its reputation or the quality or uniqueness of its products has changed in anyway as a result of Bradshaw's entry into the market. Therefore, any reputational harm to be suffered by Hutzler is purely speculative and therefore, does not meet Hutzler's burden of establishing "irreparable harm." See Wisdom Imp. Sales, Co., LLC v. Labatt Brewing Co., Ltd., 339 F.3d 101, 113 (2d Cir. 2003).

### B.    Economic Harm

Hutzler has not carried its burden of a clear showing of a threat of "irreparable harm." See Id., at 113 (Defining "irreparable harm" as harm that is "certain and imminent harm for which a monetary award does not adequately compensate." (internal citations omitted)).

Hutzler does not provide evidence that eleven lost accounts were lost to Bradshaw. Hutzler asserts further that Bradshaw may have permanently displaced Hutzler's products in supermarkets. Id. at 15. However, as Bradshaw notes, commercial agreements between supermarket retailers and Bradshaw vary widely, but in no instance does Bradshaw pay an annual fee to a supermarket retailer to have exclusive rights to space. Megorden Aff. ¶ 8. Moreover, Bradshaw is not the only other player in the market; therefore, the absence of evidence connecting Hutzler's loss of accounts, does not support the grant of a preliminary injunction against Bradshaw to remedy such losses. There are several third parties selling competing goods. Id. at 10. The loss of market share in the form of lost accounts, may be compensated by a monetary award for the value of those accounts.

Second, Hutzler offers no evidence of price erosion. Bradshaw's products are of at least comparable quality – in fact Bradshaw believes its product to be superior to Hutzler's – and as to price, Bradshaw generates reasonable margins, but has no control over the final retail price. Id. at 11. In any event, in general, a patent holder can be compensated for price erosion in the form of

money damages for lost profits. See Ericsson, Inc. v. Harris Corp., 352 F.3d 1369, 1378-79 (Fed. Cir. 2003) (discussing a patentee's successful establishment of damages under a theory of price erosion, and the requirements for doing so).

Hutzler's claim of "irreparable harm" based on "market" and "goodwill" erosion is similar to its claims of loss of market share and reputational harm. Hutzler's claim is based on its assertion that Bradshaw's products are "more cheaply constructed." Hutzler Memo. at 16. First, as stated above, Bradshaw's believes its products are superior to those of Hutzler, and of at least comparable quality. Megorden Aff. ¶ 11. Hutzler has provided no evidence of the allegedly "cheap" construction of Bradshaw's products on which its claim of "market" and "goodwill" erosion is based. Thus, this theory of "irreparable harm" is neither actual nor imminent.

Lastly, Hutzler claims it will be irreparably harmed as a result of negative effects on sales momentum and profits. The only evidence relied on by Hutzler is the displacement in some supermarket retailers as with the claim of loss of market share above, for which there is no evidence connecting Bradshaw's presence in the market as the cause of its displacement. Hutzler has not shown that any displacement in supermarket retailers, loss in sales momentum, market share or profits are not simply due to the increased competition in the field and the ability to source products from overseas that Hutzler acknowledges (Hutzler Memo. at 2), rather than directly attributable to the introduction of Bradshaw's accused product into the market. Moreover, Hutzler has not demonstrated why such losses could not be compensated by monetary damages. See Nutrition 21 v. U.S., 930 F.2d 867, 871 (Fed. Cir. 1991) ("[N]either the difficulty of calculating losses in market share, nor speculation that such losses might occur, amount to proof of special circumstances justifying the extraordinary relief of an injunction prior to trial.")

### C.      Encouragement of Further Infringement by Other Competitors

Hutzler also provides no evidence that Bradshaw's action have encouraged "knock-off " products. Further, Hutzler cannot prevent legitimate competition in the marketplace; it can only prevent those products that infringe the limited scope of its design patents and/or those that are likely to cause confusion with Hutzler's products and have been produced in bad faith. Thus such harm is neither actual, nor imminent and therefore does not satisfy Hutzler's burden to show that irreparable harm is "likely". See New York City Triathlon, 704 F. Supp. 2d at 313.

Hutzler's failure to establish a basis for a finding of irreparable harm, a clear showing of which by Hutzler is required for its claims of infringement and unfair competition, precludes the grant of a preliminary injunction.

## IV.      THE BALANCE OF HARDSHIPS DOES NOT FAVOR AN INJUNCTION

Where Hutzler has failed to carry its burden as to a showing of likelihood of success on the merits and failed to demonstrate that it will suffer irreparable harm, the court need not weigh the balance of the hardships or the public interest. See Polymer Tech., Inc., v. Bridewell, 103 F.3d 970, 973-974 (Fed. Cir. 1996). See also Amazon, 239 F.3d at 1350 ("a movant cannot be granted a preliminary injunction unless it establishes both of the first two factors.")

The only harms that Hutzler's may face if the injunction is not issued are economic harms, which can be compensated by money damages if Hutzler ultimately succeeds on the merits.

However, Bradshaw would be harmed by failure to meet the terms of present importation and distribution contracts and be forced to breach its present obligations, which would injure its reputation within the industry, subject it to significant economic harm and hinder its potential to engage in future arrangements with those parties. Megorden Aff. ¶ 13.

Therefore, a balancing of the hardships does not weigh in favor of granting a preliminary injunction.

## V.    THE PUBLIC INTEREST DOES NOT FAVOR A PRELIMINARY INJUNCTION

In light of Hutlzer's failure to carry its burden with respect to all factors for each of its claims, this factor need not be considered. See Amazon, 239 F.3d at 1350.

## CONCLUSION

Bradshaw respectfully requests that Hutzler's Motion for a Preliminary Injunction be denied in its entirety as Hutzler has not carried its burden to establish that this extraordinary remedy is warranted in this case. In particular, Hutzler cannot clearly show a likelihood of success on the merits or a threat of irreparable harm; thus, a preliminary injunction cannot issue.

Dated: November 7, 2011                    Respectfully submitted,

                                           BUCHANAN INGERSOLL & ROONEY PC


                                             /s/ Tod S. Chasin
                                           700 Alexander Park, Suite 300
                                           Princeton, NJ 08540
                                           Phone: (609) 987-6802
                                           Fax: (609) 520-0360
                                           *tod.chasin@bipc.com*

                                           OF COUNSEL:
                                           Robert J. Kenney
                                           BIRCH, STEWART, KOLASCH & BIRCH, LLP
                                           8110 Gatehouse Road, Suite 100E
                                           Falls Church, VA 22042
                                           Phone: (703) 205-8000
                                           Fax: (703) 205-8050
                                           *RJK@bskb.com*

                                           **ATTORNEYS FOR DEFENDANT**
                                           **BRADSHAW INTERNATIONAL, INC.**