Turner P. Smith (TS 8052)
Michael R. Graif (MG 4795)
Curtis, Mallet-Prevost, Colt & Mosle LLP
101 Park Avenue
New York, New York  10178-0061
Telephone: (212) 696-6000
Facsimile: (212) 697-1559

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------------- X

HUTZLER MANUFACTURING COMPANY, INC.

                       Plaintiff,

                -against-

BRADSHAW INTERNATIONAL, INC.,

                     Defendant.

:
:
:
:
:
:
:
:    11 Civ. 7211 (PGG) (RLE)
:
:
:
:
:

---------------------------------------------------------------------- X

**HUTZLER'S REPLY MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTION FOR A PRELIMINARY INJUNCTION**

## <u>TABLE OF CONTENTS</u>

**Page #**

Preliminary Statement...................................................................................................................1

ARGUMENT ................................................................................................................................1

    A.  Bradshaw Has Failed to Rebut Hutzler's Showing That it is Likely to Succeed
        on the Merits .....................................................................................................................1

        1.  Bradshaw Has Not Shown That the Patents are Invalid and That the
            Construction of the Patent Claims Should Be Limited.............................................2

        2.  Bradshaw Has Not Shown That Its Products Do Not Infringe the Patents.............4

        3.  Bradshaw Has Failed to Show That Hutzler is Unlikely to Succeed on the
            Merits of its Unfair Competition Claim.................................................................7

    B.  Hutzler Will Suffer Irreparable Harm in the Absence of an Injunction ........................8

    C.  The Balance of Hardships Favors Hutzler....................................................................10

    D.  The Public Interest Favors Protecting Hutzler's Patent Rights ....................................11

Conclusion ..................................................................................................................................11

## TABLE OF AUTHORITIES

### Cases

Amini Innovation Corp. v. Anthony California, Inc.,
439 F.3d 1365 (Fed. Cir. 2006).................................................................................. 2

Berry Sterling Corp. v. Prescor Plastics, Inc.,
122 F.3d 1452 (Fed. Cir. 1997).................................................................................. 3

Blumenthal Distrib., Inc. v. Executive Chair, Inc.,
No. CV-10-1280, 2010 U.S. Dist. LEXIS 142193 (E.D.N.Y. Nov. 9, 2010)........................ 2, 8

Canon, Inc. v. GCC Int'l Ltd.,
263 Fed. Appx. 57 (Fed. Cir. Jan. 25, 2008)............................................................... 9

Catalina Lighting, Inc. v. Lamps Plus, Inc.,
295 F.3d 1277 (Fed. Cir. 2002).................................................................................. 5

Contessa Food Prods., Inc. v. Conagra, Inc.,
282 F.3d 1370 (Fed. Cir. 2002).................................................................................. 1

eBay, Inc. v. MercExchange LLC,
547 U.S. 388 (2006)................................................................................................. 8

Elmer v. ICC Fabricating, Inc.,
57 F.3d 1571 (Fed. Cir. 1995).................................................................................... 6

Etna Prods. Co. v. Q Mktg. Group, Ltd.,
No. 03 Civ. 3805, 2004 U.S. Dist. LEXIS 15323 (S.D.N.Y. Aug. 4, 2004) ........................ 2

Finjan Software, Ltd. v. Secure Computing Corp.,
No. 06-369, 2009 WL 2524495 (D. Del. Aug. 18, 2009)................................................ 10

Gorham Mfg. Co. v. White,
81 U.S. 511 (1871)................................................................................................... 5

Jack Schwartz Shoes, Inc. v. Skechers, U.S.A.,
Inc., 233 F. Supp. 2d 512 (S.D.N.Y. 2002) ................................................................. 5, 7

Jacobson v. Cox Paving Co.,
No. 89 Civ. 1786, 1991 U.S. Dist. LEXIS 17787 (D. Ariz. May 16, 1991)......................... 9

L.A. Gear, Inc. v. Thom McAn Shoe Co.,
988 F.2d 1117 (Fed. Cir. 1993).................................................................................. 2

Lee v. Dayton-Hudson Corp.,
838 F.2d 1186 (Fed. Cir. 1988).................................................................................. 6

Metso Minerals, Inc. v. Powerscreen Int'l Distrib. Ltd.,
788 F. Supp. 2d 71 (E.D.N.Y. 2011) .......................................................................... 8

National Lampoon, Inc. v. Am. Broad. Cos.,
376 F. Supp. 733 (S.D.N.Y. 1974), aff'd, 497 F.2d 1343 (2d Cir. 1974)............................ 9

New York City Triathlon, LLC v. NYC Triathlon Club, Inc.,
704 F. Supp. 2d 305 (S.D.N.Y. 2010)......................................................................... 7

Nike, Inc. v. Meitac Int'l Enterprise Co., Ltd.,
No. 06-CV-00934, 2006 U.S. Dist. LEXIS 94662 (D. Nev. Oct. 11, 2006) ........................ 5

Norbrook Labs. Ltd. v. G.C. Hanford Mfg. Co.,
126 Fed. Appx. 507 (2d Cir. 2005)............................................................................ 7

Robert Bosch LLC v. Pylon Mfg. Corp.,
No. 2011-1096, 2011 U.S. App. LEXIS 20700 (Fed. Cir. Oct. 13, 2011) ........................... 10

Sanofi-Synthelabo v. Apotex, Inc.,
470 F.3d 1368 (Fed. Cir. 2006).................................................................................. 9

The Rockport Co., Inc. v. Deer Stags, Inc.,
   65 F. Supp. 2d 189 (S.D.N.Y. 1999)........................................................................... 5
Warner Bros., Inc. v. Gay Toys, Inc.,
   658 F.2d 76 (2d Cir. 1981)..................................................................................... 10

## **Rules**

35 U.S.C. § 282.............................................................................................................. 2
35 U.S.C. § 283.............................................................................................................. 1
Fed. R. Civ. P. 65.......................................................................................................... 1

**Preliminary Statement**

Plaintiff Hutzler Manufacturing Company, Inc. ("Hutzler"), by its attorneys, respectfully submits this Reply Memorandum of Law in further support of its motion for a preliminary injunction pursuant to Fed. R. Civ. P. 65 and 35 U.S.C. § 283.

Defendant Bradshaw International, Inc. ("Bradshaw") has failed to rebut Hutzler's showing of its entitlement to a preliminary injunction. *First*, Bradshaw has not raised substantial questions as to the validity of the U.S. Patent No. D538,114 ("the '114 Patent") and U.S. Patent No. D592,463 ("the '463 Patent") (collectively, "the Patents"). *Second*, Bradshaw's arguments that its Onion and Garlic Keepers do not infringe the Patents likewise fail because an ordinary observer, giving such attention as a purchaser usually gives, would be deceived by the Onion and Garlic Keepers, inducing him to purchase these products, supposing them to be the Onion and Garlic Savers (collectively, "the Savers"). *Finally*, Bradshaw has not overcome Hutzler's showing of irreparable harm that Hutzler will suffer in the absence of an injunction. The Court should grant Hutzler's motion and issue a preliminary injunction.

**ARGUMENT**

**A.    Bradshaw Has Failed to Rebut Hutzler's Showing That it is Likely to Succeed on the Merits**

Determining whether a design patent has been infringed requires: "(1) construction of the patent claim, and (2) comparison of the construed claim to the accused product." Contessa Food Prods., Inc. v. Conagra, Inc., 282 F.3d 1370, 1376 (Fed. Cir. 2002). "In construing a design patent claim, the scope of the claimed design encompasses 'its visual appearance as a whole,' and in particular 'the visual impression it creates.'"  Id. (citation omitted).  Critically, "the patented and accused designs *do not have to be identical* in order for design patent infringement to be found."  Id. (emphasis added).

*1.      Bradshaw Has Not Shown That  the Patents are Invalid and That the
Construction of the Patent Claims Should Be Limited*

An issued patent enjoys a statutory presumption of validity and an alleged

infringer bears the burden of demonstrating otherwise.  See 35 U.S.C. § 282.  Design patents

protect the ornamental aspects of a product.  See L.A. Gear, Inc. v. Thom McAn Shoe Co., 988

F.2d 1117, 1123 (Fed. Cir. 1993).  The design of a useful article is "functional when the

appearance of the claimed design is 'dictated by' the use or purpose of the article."  Id.  "In

determining whether a design is primarily functional or primarily ornamental the claim design

[i]s *viewed in its entirety*, for the ultimate question is not the functional or decorative aspect of

each separate feature, but the *overall appearance* of the article, in determining whether the

claimed design is dictated by the utilitarian purpose of the article."  Id. (emphasis added); see

also Amini Innovation Corp. v. Anthony California, Inc., 439 F.3d 1365, 1372 (Fed. Cir. 2006)

(trial court must avoid relying on an "element-by-element comparison").

Only when the "design of a particular feature must appear a certain way, and *only

that way*, in order to perform a particular function, is the feature functional and not ornamental."

Etna Prods. Co. v. Q Mktg. Group, Ltd., No. 03 Civ. 3805, 2004 U.S. Dist. LEXIS 15323, at *22

(S.D.N.Y. Aug. 4, 2004) (citation omitted) (emphasis added).  "[T]he fact that certain elements

of a patent design also service a functional purpose 'does not mean that the specific design of

each element, and the combination of these elements . . . is dictated by primarily functional

considerations.'"  Blumenthal Distrib., Inc. v. Executive Chair, Inc., No. CV-10-1280, 2010 U.S.

Dist. LEXIS 142193, at *13 (E.D.N.Y. Nov. 9, 2010) (citing L.A. Gear, 988 F.2d at 1123).

The Federal Circuit has enumerated factors to examine in determining whether

the overall appearance of the patented design was mandated by functional considerations:

[1] Consideration of alternative designs . . . [2] whether the
protected design represents the best design; [3] whether alternative
designs would adversely affect the utility of the specified article;
[4] whether there are any concomitant utility patents; [5] whether

the advertising touts particular features of the design as having specific utility; and [6] whether there are any elements in the design or an overall appearance clearly not dictated by function.

Berry Sterling Corp. v. Prescor Plastics, Inc., 122 F.3d 1452, 1455 (Fed. Cir. 1997).

Bradshaw does not address these factors, which show that the patented designs were not mandated by functional considerations. *First*, Hutzler considered alternative designs for the Savers. See Declaration of Richard S. Ehrenhaus, dated November 18, 2011 ("Ehrenhaus Decl."), ¶ 4. *Second*, there is no evidence that there is a specific design that is best for storing produce. Id. Produce can be – and more typically is – adequately stored in any shape without adversely affecting the utility of the product. *Third*, there are no corresponding utility patents. *Fourth*, there is no evidence that any advertising touts particular features of the Savers as having a specific utility. *Finally*, none of the elements or the overall appearance of the Savers is dictated by function.

*First*, Bradshaw argues that the "line across the product" is a functional aspect of the design because "[t]he most likely location to place the separation is at the midsection, since this is the widest part of the container, and therefore serves a function of allowing the wide4st [sic] access to insert and remove items." Defendant's Memorandum of Law in Opp. to Plaintiff's Motion for a Prelim. Inj. ("Bradshaw Opp."), p. 16. The line across the middle does not need to appear in that location in order to perform the function of opening the container; that feature is ornamental. Even if placing a line in the "most likely location" were to satisfy the standard for functionality, this statement is contradicted by evidence that Bradshaw itself points to. The Megorden Affidavit ("Megorden Aff.") attaches examples of 14 other products on the market for onion or garlic containers; nine of these containers have lines in locations other than at the widest part of the container. See Megorden Aff., Exhs. A, A1, A4, and A5. Based on the sample set provided by Bradshaw, the middle part of the container is not the most likely area of

the container to place the line, and in any event, does not meet the test for functionality because its location is not mandated by function.

*Second*, Bradshaw's assertion that the Patents are invalid because the Savers are onion and garlic containers is also contradicted by Bradshaw's own evidence.  Bradshaw states: "[i]n order for an onion container to be an onion container or a garlic container to be a garlic container, it should have the general size and shape of an onion or a piece of garlic."  Bradshaw Opp., p. 16.  This is clearly not the case.  The Savers contain only ornamental features and could have been designed in a different shape with different details.  See Ehrenhaus Decl., ¶ 4. Bradshaw's own Megorden Affidavit includes pictures of Nordic Ware, Fox Run, MSC, and Progressive onion and garlic containers that are not in the shape of a whole onion or garlic.  See Megorden Aff., Exhs. A, A1, A4, and A5.  In addition, if the sole purpose of the appearance of the Savers were to signal the contents, this could be achieved in other ways, including labeling the container, as several manufacturers have done.  See Ehrenhaus Decl., Exh. A.  Since, the overall appearances of the patented designs were not mandated by functional considerations, the Patents are valid.

### 2.  **Bradshaw Has Not Shown That Its Products Do Not Infringe the Patents**

Bradshaw has failed to overcome Hutzler's showing that the Onion and Garlic Keepers infringe the Patents.[1]  *First*, as discussed, neither the entire Onion and Garlic Savers, nor any aspects of the Savers, are functional.  *Second*, the Onion and Garlic Keepers are substantially similar to the '114 and '463 Patents.  The "ordinary observer" test dictates that "if, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are **substantially the same**, if the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other, the first one patented is infringed by the other."

---

[1] Exhibits A2 and A3 of the Megorden Affidavit show comparisons of the Onion/Garlic Keepers and Hutzler products not at issue here.  The pictured products are protected under other patents.

Catalina Lighting, Inc. v. Lamps Plus, Inc., 295 F.3d 1277, 1286 (Fed. Cir. 2002) (quoting

Gorham Mfg. Co. v. White, 81 U.S. 511, 528 (1871)) (emphasis added).

      Importantly, the patented and accused designs do *not* need to be identical for

patent infringement to be found.  For example, in Catalina Lighting, Inc. v. Lamps Plus, Inc., 295

F.3d 1277 (Fed. Cir. 2002), the court upheld the jury's finding of patent infringement.  The

overall design of the patent at issue and the infringing product were found to be similar.  295

F.3d at 1282, 1285.  However, the comparison shows that specific features of the torchiere lamp

are different – namely the shape of the lightbulb holder and the joint.  See id.; see also

Addendum to Reply, Comparison 1 (showing a comparison of the two products).[2]

      Similarly, in The Rockport Co., Inc. v. Deer Stags, Inc., 65 F. Supp. 2d 189

(S.D.N.Y. 1999), the court granted plaintiff's partial motion for summary judgment, finding that

there was no material issue of fact regarding the substantial similarity of the "overall visual

appearance" of defendant's shoe and the patent at issue.  Id. at 195.  The court noted the

similarities between the shoes, but also noted two differences between the shoes, namely that the

mud guard of defendant's shoe was broken into several parts while the patent had a one piece

mud guard, and defendant's shoe did not have a "double layer of shoe extending from the bottom

of the eyestay to between the second and third eyelets" as the patent did.  Id.; see also Addendum

to Reply, Comparison 2 (showing a comparison of the two products).[3]

---

[2] In the attached Addendum, we have collected for the Court the design patent drawings at issue in the principal cases cited here and displayed them next to pictures/drawings of the accused products at issue in each case.

[3] Other courts have made similar determinations for other shoes.  See Nike, Inc. v. Meitac Int'l Enterprise Co., Ltd., No. 06-CV-00934, 2006 U.S. Dist. LEXIS 94662, at *9 (D. Nev. Oct. 11, 2006); Addendum to Reply, Comparison 3 (showing a comparison of the two products); Jack Schwartz Shoes, Inc. v. Skechers U.S.A., Inc., No. 00 Civ. 7721, 2002 U.S. Dist. LEXIS 25699, at *38 (S.D.N.Y. Sept. 9, 2002) (recommending that the court issue a preliminary injunction and concluding that patent was infringed, despite differences in the collar, shape of the buckle, placement of the logo, and shape of the strap); Addendum to Reply, Comparison 4 (showing a comparison of the two products).

Both Lee v. Dayton-Hudson Corp., 838 F.2d 1186 (Fed. Cir. 1988) and Elmer v. ICC Fabricating, Inc., 57 F.3d 1571 (Fed. Cir. 1995) cited by Bradshaw are distinguishable. Bradshaw cites Lee in support of the notion that design patents cannot protect the structural or functional aspects of an article, and that to infringe a patent, an alleged infringer must copy the ornamental aspects of the article so that the "resemblance is such to deceive." Lee, 838 F.2d at 1889 (citation omitted). This proposition is not in dispute.

Bradshaw does not otherwise explain how the facts or law in Lee are applicable to our case. Indeed, there are significant differences between the Lee case and the case at hand. The Lee court found no substantial similarity between the products by looking at: "the wooden balls, their polished finish and appearance, the proportions, the carving on the handle, and all other ornamental characteristics." Id. at 1188; see also Addendum to Reply, Comparison 5 (showing a comparison of the two products). Visually, the two products are obviously different. The proportions between the two balls and handle are completely different, and so are the general shape of the balls. Id. The handles are different shapes and the patented design includes significant amounts of etching and ridging, which the allegedly infringing product did not have. Id. In contrast, the proportions of the '114 and '463 Patents' designs and the Onion and Garlic Saver, respectively, are entirely identical. An ordinary observer would not be able to distinguish a difference in the size or shape of the two products. Both products also have a significant amount of ridging, contributing to their similarity.

Similarly, Bradshaw does not explain how the Elmer facts or law are applicable to our case. Again, visually, the Elmer products are obviously dissimilar. See Addendum to Reply, Comparison 6 (showing a comparison of the two products). The only similarities are that both products are vertical signs with ribbing and an upper protrusion. Id. In contrast, the Onion and Garlic Keepers are far more similar to the '114 and '463 Patents, embodying the same size, shape, ridging, proportions, base, and slit across the middle, resulting in the same "look" for the

two products.  A visual comparison of defendant's products to Hutzler's patented designs leads to the clear conclusion that "an ordinary observer could easily confuse" the two.  Jack Schwartz Shoes, Inc. v. Skechers, U.S.A., Inc., 233 F. Supp. 2d 512, 514 (S.D.N.Y. 2002).

> 3.     ***Bradshaw Has Failed to Show That Hutzler is Unlikely to Succeed on the Merits of its Unfair Competition Claim***

Bradshaw does not even address the central tenet of unfair competition – that it misappropriated Hutzler's labors, skills, expenditures, goodwill, benefit or property right for a commercial advantage.  See Norbrook Labs. Ltd. v. G.C. Hanford Mfg. Co., 126 Fed. Appx. 507, 509 (2d Cir. 2005); New York City Triathlon, LLC v. NYC Triathlon Club, Inc., 704 F. Supp. 2d 305, 325 (S.D.N.Y. 2010).  Bradshaw has misappropriated Hutzler's *entire* line of Food Saver Products, giving Bradshaw a clear commercial advantage.  See Ehrenhaus Decl., ¶ 18.  Specifically, Bradshaw misappropriated labors, skills, expenditures, and goodwill that Hutzler accrued while developing, marketing, and selling the Food Saver Line.

Hutzler has shown that defendant's products are likely to cause confusion or to deceive purchasers as to the origin of the goods.  See New York City Triathlon, 704 F. Supp. 2d at 325.  The similarity between the Food Saver and Food Keeper Lines is beyond obvious and defies coincidence.  See Ehrenhaus Decl., ¶ 18.  Bradshaw chose the exact same five fruits and vegetable containers from the Hutzler Food Saver Line as containers for Bradshaw's Food Keeper Line.  Id.  All of the containers are essentially the same size, shape, and color, and operate to preserve produce.  Id.  In addition, Hutzler and Bradshaw are direct competitors.  Id.  Because the services and products provided by Hutzler and Bradshaw are essentially the same, consumers are likely to confuse the origin of the products.  Id.  Finally, Hutzler and Bradshaw products have been commingled in supermarkets, therefore leading to a confusion as to the origin of goods.  Id.; Ehrenhaus Decl., Exh. D.

Finally, Bradshaw has admitted that it knew Hutzler held these design patents at the time Bradshaw created and distributed the Keeper Line of Products.  See Bradshaw Opp., p. 20.  This, coupled with notice of the infringement by Hutzler's counsel, constitutes bad faith. Accordingly, the likelihood of a finding of unfair competition by defendant is substantial.

### B.      Hutzler Will Suffer Irreparable Harm in the Absence of an Injunction

Bradshaw has failed to overcome Hutzler's showing of irreparable harm absent the court's granting of a preliminary injunction.  "The principal value of a patent is a right to exclude."  Blumenthal, 2010 U.S. Dist. LEXIS 142193, at *34.  Therefore, it "is not surprising, given the difficulty of protecting a right to *exclude* through monetary remedies" that most courts have granted preliminary injunctions upon a finding of infringement.  Id. (citing eBay, Inc. v. MercExchange LLC, 547 U.S. 388, 395 (2006) (Roberts, J., concurring)).

*First*, Hutzler's reputation and goodwill have been irreparably harmed. Consumers' perceptions of Hutzler's quality and uniqueness have drastically changed since Bradshaw entered the market.  See Ehrenhaus Decl., ¶ 11.  In addition, Hutzler and Bradshaw are direct competitors vying for the business of the same group of customers.  Id.

*Second*, as a result of Bradshaw's infringement, Hutzler has suffered loss of market share, loss of customers, as well as loss of access to potential customers.  Hutzler has lost at least eleven accounts to Bradshaw.  Id., ¶ 12.  Hutzler received direct notice from customers that it lost at least three accounts to Bradshaw.  Id., Exh. B.  In addition, Hutzler's sales have drastically dropped since Bradshaw's entry into the marketplace.  Id., ¶ 12.  Because market share is so difficult to recover and because it is impossible to determine what market share Hutzler would have possessed but for Bradshaw's infringement, Hutzler has been irreparably harmed.  See, e.g., Metso Minerals, Inc. v. Powerscreen Int'l Distrib. Ltd., 788 F. Supp. 2d 71, 74-75 (E.D.N.Y. 2011).

*Third*, Hutzler has and will suffer price erosion as a result of Bradshaw's lower-priced "knock-off" Keepers.  Id., ¶ 13.  Hutzler has already had to reduce its prices as a result of Bradshaw's knock-off products.  Id., ¶ 13, Exh. C.  Price is a critical factor in the determination of which produce storage product to buy.  Id.  Contrary to Bradshaw's contention, price erosion constitutes irreparable harm.  See Canon, Inc. v. GCC Int'l Ltd., 263 Fed. Appx. 57, 62 (Fed. Cir. Jan. 25, 2008) (unpublished); Sanofi-Synthelabo v. Apotex, Inc., 470 F.3d 1368, 1382 (Fed. Cir. 2006).

*Fourth*, Bradshaw's entry into the market has had an incontrovertibly negative effect on Hutzler's sales momentum and profits.  Since Bradshaw's entry into the market in the beginning of 2011, Hutzler's sales for the Onion and Garlic Savers have decreased by 46%.  See Ehrenhaus Decl., ¶ 13.  No other competitors have entered the market during this time.  Id. Defendant's sale and distribution of the Onion and Garlic Keepers has had and will continue to have an irreparable effect on Hutzler's sales momentum and profits, as demonstrated by Hutzler's displacement by Bradshaw in many supermarkets and retailers.

*Finally*, Bradshaw's actions will encourage knock-off products.  Bradshaw is one of the two largest players in the distribution/sales of housewares to supermarket and mass market retailers.  See Ehrenhaus Decl., ¶ 14.  Bradshaw's success in copying Hutzler's patents will only spur other manufacturers into flooding the market with knock-offs.  See Jacobson v. Cox Paving Co., No. 89 Civ. 1786, 1991 U.S. Dist. LEXIS 17787, at *45 (D. Ariz. May 16, 1991).

Unfair competition claims are not compensable by money damages because of the loss of goodwill and reputation resulting from a defendant's activities.  See National Lampoon, Inc. v. Am. Broad. Cos., 376 F. Supp. 733, 750 (S.D.N.Y. 1974), aff'd, 497 F.2d 1343 (2d Cir. 1974) (citation omitted).  In addition, Hutzler's loss of its position of being an industry leader and loss of its advantage of being the pioneer in the field, for which it duly sought and obtained

patent protection, constitutes irreparable harm.  See Warner Bros., Inc. v. Gay Toys, Inc., 658

F.2d 76, 79 (2d Cir. 1981); see also Ehrenhaus Decl., ¶ 15.

> **C.**     **The Balance of Hardships Favors Hutzler**

Because Hutzler's business, reputation, and value of its patents will be irreparably

harmed if Bradshaw is not enjoined, money damages cannot sufficiently compensate Hutzler for

Bradshaw's infringing acts.  As a result of Bradshaw's infringement, Hutzler has lost market

share and customers.  See Ehrenhaus Decl., ¶ 16.  If Bradshaw's infringement continues, Hutzler

will continue to lose market share and customers and its entire business may be jeopardized.  Id.

Without an injunction, Hutzler may not be able to recoup its investment in researching and

developing the patented products.  See Finjan Software, Ltd. v. Secure Computing Corp., No.

06-369, 2009 WL 2524495, at *10 (D. Del. Aug. 18, 2009).  Further, without an injunction,

Hutzler will be forced to compete with its own patented products and will be deprived of its right

to exclude a direct competitor.  See id.; see also Ehrenhaus Decl., ¶ 17.

While Hutzler has suffered at the hands of Bradshaw, any harm to Bradshaw is of

its own making.  Bradshaw took a calculated risk by copying Hutzler's product.  Having reaped

substantial benefits through the sale of its infringing products, Bradshaw cannot complain that it

will suffer any purported hardship because of an injunction.  See Robert Bosch LLC v. Pylon

Mfg. Corp., No. 2011-1096, 2011 U.S. App. LEXIS 20700, at *35-36 (Fed. Cir. Oct. 13, 2011).

Finally, Bradshaw sells more than 2,400 different items.  See Bradshaw Opp., p.

2.  Bradshaw has over 1,000 employees, sells over 100,000,000 pieces per year, and, under the

brand Good Cook, has the number one market share for kitchenware in grocery stores.  See

Ehrenhaus Decl., ¶ 9.  The Keeper Line represents a fraction of 1% of their products.  Id.  An

injunction would cause Bradshaw little to no harm.  On the other hand, Hutzler has fewer than 20

employees.  Id.  The Saver Line of products is a Hutzler staple, representing approximately 63%

of its business.  Id.  If Bradshaw is allowed to continue selling the Keeper Line, Hutzler will be

irreparably harmed.  Id., ¶ 19.  It is manifest that balancing the parties' respective potential hardships favors Hutzler.

     **D.**     **The Public Interest Favors Protecting Hutzler's Patent Rights**

     Finally, Bradshaw has failed to address how the public interest could weigh in its favor.  It is unclear what legitimate public interest would be served by its distribution of patent-infringing products and the public interest clearly favors protecting Hutzler's patent rights.

**Conclusion**

     Bradshaw has failed to rebut Hutzler's showing of entitlement to a preliminary injunction.  Hutzler respectfully requests that the Court grant its motion.

New York, New York
November 18, 2011

                    Respectfully submitted,

                    CURTIS, MALLET-PREVOST,
                      COLT & MOSLE LLP

                    By:  */s/Turner P. Smith*
                      Turner P. Smith (TS 8052)
                      Michael R. Graif (MG 4795)
                      Nicole M. Mazanitis (NM 1983)
                    101 Park Avenue
                    New York, New York  10178
                    (212) 696-6000

                    *Attorneys for Plaintiff*

# **Addendum**

# Comparison 1

<u>Catalina Lighting, Inc. v. Lamps Plus, Inc.</u>, 295 F.3d 1277 (Fed. Cir. 2002)





**Lamps Plus U.S. Patent
No. D353,904
Figure 2**

**Infringing Product**

# Comparison 2

The Rockport Co., Inc. v. Deer Stags, Inc., 65 F. Supp. 2d 189 (S.D.N.Y. 1999)



**Rockport U.S. Patent
No. D380,594
Figure 1**



**Infringing Product**



**Rockport U.S. Patent
No. D380,594
Figure 3**



**Infringing Product**

# Comparison 2

<u>The Rockport Co., Inc. v. Deer Stags, Inc.</u>, 65 F. Supp. 2d 189 (S.D.N.Y. 1999)



**Rockport U.S. Patent
No. D380,594
Figure 4**



**Infringing Product**

# Comparison 2

The Rockport Co., Inc. v. Deer Stags, Inc., 65 F. Supp. 2d 189 (S.D.N.Y. 1999)



**Rockport U.S. Patent
No. D380,594
Figure 5**



**Infringing Product**

# Comparison 3

<u>Nike, Inc. v. Meitac Int'l Enterprise Co., Ltd.</u>,
No. 06-CV-00934, 2006 U.S. Dist. LEXIS 94662 (D. Nev. Oct. 11, 2006)



**NIKE U.S. Patent
No. D498,914
Figure 1**



**Infringing Product**

# Comparison 3

<u>Nike, Inc. v. Meitac Int'l Enterprise Co., Ltd.</u>,
No. 06-CV-00934, 2006 U.S. Dist. LEXIS 94662 (D. Nev. Oct. 11, 2006)



FIG. 4

**NIKE U.S. Patent
No. D499,248
Figure 4**



**Infringing Product**

# Comparison 3

<u>Nike, Inc. v. Meitac Int'l Enterprise Co., Ltd.</u>,
No. 06-CV-00934, 2006 U.S. Dist. LEXIS 94662 (D. Nev. Oct. 11, 2006)



**NIKE U.S. Patent
No. D523,620
Figure 2**



**Infringing Product**

# Comparison 3

<u>Nike, Inc. v. Meitac Int'l Enterprise Co., Ltd.</u>,
No. 06-CV-00934, 2006 U.S. Dist. LEXIS 94662 (D. Nev. Oct. 11, 2006)





**NIKE U.S. Patent
No. D511,884
Figure 1**

**Infringing Product**

# Comparison 3

Nike, Inc. v. Meitac Int'l Enterprise Co., Ltd.,
No. 06-CV-00934, 2006 U.S. Dist. LEXIS 94662 (D. Nev. Oct. 11, 2006)



**NIKE U.S. Patent
No. D512,214
Figure 1**



**Infringing Product**

# Comparison 3

<u>Nike, Inc. v. Meitac Int'l Enterprise Co., Ltd.</u>,
No. 06-CV-00934, 2006 U.S. Dist. LEXIS 94662 (D. Nev. Oct. 11, 2006)





**NIKE U.S. Patent
No. D522,231
Figure 1**

**Infringing Product**

# Comparison 3

Nike, Inc. v. Meitac Int'l Enterprise Co., Ltd.,
No. 06-CV-00934, 2006 U.S. Dist. LEXIS 94662 (D. Nev. Oct. 11, 2006)





**NIKE U.S. Patent
No. D522,739
Figure 1**

**Infringing Product**

# Comparison 3

<u>Nike, Inc. v. Meitac Int'l Enterprise Co., Ltd.</u>,
No. 06-CV-00934, 2006 U.S. Dist. LEXIS 94662 (D. Nev. Oct. 11, 2006)



FIG. 1



**NIKE U.S. Patent
No. D522,740
Figure 1**

**Infringing Product**

# Comparison 3

<u>Nike, Inc. v. Meitac Int'l Enterprise Co., Ltd.</u>,
No. 06-CV-00934, 2006 U.S. Dist. LEXIS 94662 (D. Nev. Oct. 11, 2006)



**NIKE U.S. Patent
No. D523,229
Figure 1**



**Infringing Product**

# Comparison 3

Nike, Inc. v. Meitac Int'l Enterprise Co., Ltd.,
No. 06-CV-00934, 2006 U.S. Dist. LEXIS 94662 (D. Nev. Oct. 11, 2006)



**NIKE U.S. Patent
No. D523,230
Figure 1**



**Infringing Product**

# Comparison 3

<u>Nike, Inc. v. Meitac Int'l Enterprise Co., Ltd.</u>,
No. 06-CV-00934, 2006 U.S. Dist. LEXIS 94662 (D. Nev. Oct. 11, 2006)



**NIKE U.S. Patent
No. D523,233
Figure 1**



**Infringing Product**

11

# Comparison 3

Nike, Inc. v. Meitac Int'l Enterprise Co., Ltd.,
No. 06-CV-00934, 2006 U.S. Dist. LEXIS 94662 (D. Nev. Oct. 11, 2006)



**NIKE U.S. Patent
No. D523,618
Figure 1**



**Infringing Product**

# Comparison 3

Nike, Inc. v. Meitac Int'l Enterprise Co., Ltd.,
No. 06-CV-00934, 2006 U.S. Dist. LEXIS 94662 (D. Nev. Oct. 11, 2006)



**NIKE U.S. Patent
No. D524,529
Figure 1**



**Infringing Product**

# Comparison 4

Jack Schwartz Shoes, Inc. v. Skechers U.S.A., Inc.,
No. 00 Civ. 7721, 2002 U.S. Dist. LEXIS 25699 (S.D.N.Y. Sept. 9, 2002)





**Jack Schwartz Shoes Patent
No. D435,332
Figure 2**

**Infringing Product
Skechers 6905 Shoe**

# Comparison 4

Jack Schwartz Shoes, Inc. v. Skechers U.S.A., Inc.,
No. 00 Civ. 7721, 2002 U.S. Dist. LEXIS 25699 (S.D.N.Y. Sept. 9, 2002)



**Jack Schwartz Shoes Patent
No. D435,332
Figure 2**



**Infringing Product
Rustler Lo Shoe**

# Comparison 5

<u>Lee v. Dayton-Hudson Corp.</u>, 838 F.2d 1186 (Fed. Cir. 1988)





**Lee U.S. Patent
No. D259,142
Figure 2**

**Non-infringing Product
Dayton-Hudson
(Model 1050)**

# Comparison 5

<u>Lee v. Dayton-Hudson Corp.</u>, 838 F.2d 1186 (Fed. Cir. 1988)





**Lee U.S. Patent
No. D259,142
Figure 2**

**Non-infringing Product
Dayton-Hudson
(Model 50)**

# Comparison 6

Elmer v. ICC Fabricating, Inc., 57 F.3d 1571 (Fed. Cir. 1995)



**Elmer U.S. Patent
No. D290,620
Figure 1**



**Non-infringing Product**