USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: March 28, 2013

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

HUTZLER MANUFACTURING
COMPANY, INC.,

                Plaintiff,

- against -

BRADSHAW INTERNATIONAL, INC.,

                Defendant.

**ORDER**

11 Civ. 7211 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

        On October 20, 2011, Plaintiff Hutzler Manufacturing Company, Inc. moved for a preliminary injunction against Defendant Bradshaw International, Inc., alleging that certain Bradshaw products infringed Hutzler's design patents for garlic and onion storage containers. (Dkt. No. 4)  In a July 24, 2012 Memorandum Opinion and Order (the "Order"), this Court granted Hutzler's motion.  Hutzler Mfg. Co., Inc. v. Bradshaw Int'l, Inc., No. 11 Civ. 7211 (PGG), 2012 WL 3031150 (S.D.N.Y. July 25, 2012).  Hutzler now seeks an order requiring Bradshaw to "recall all Bradshaw Food Keeper products from each and every retail location in which any Bradshaw Food Keeper product is sold."  (July 26, 2012 Pltf. Ltr. & Proposed Order (Dkt. No. 58))  Bradshaw objects to a recall, arguing, inter alia, that Hutzler has not established a clear likelihood of success on the merits and that the burden of a recall on Bradshaw and its retailers would be unduly onerous.  For the reasons set forth below, Hutzler's application for an order requiring a recall will be denied.

**BACKGROUND**

        Hutzler manufactures a line of plastic housewares products called the "Food Saver Line," which is used for storing and preserving various types of produce.  Hutzler, 2012

WL 3031150, at *1.  Hutzler owns U.S. design patents for two products in the Food Saver Line – the "Onion Saver" and the "Garlic Saver."  Id.  In this action, Hutzler alleges that Bradshaw misappropriated the design patents for the Onion Saver and the Garlic Saver, and is selling products that infringe Hutzler's patents.  (Cmplt. ¶¶ 49-58)  Hutzler also asserts claims for unfair competition and tortious interference under New York law.  (Cmplt. ¶¶ 59-73)

After this Court granted Hutzler's motion for a preliminary injunction,[1] Hutzler submitted the following proposed preliminary injunction order:

> (1) Defendant Bradshaw, its officers, agents, servants, employees, representatives, attorneys, related companies, successors, assigns, and all others in active concert or participation with them are enjoined, pending the hearing and determination of this action, from making, using, offering for sale, selling, importing, or distributing the Bradshaw Onion Keeper or the Bradshaw Garlic Keeper, or any other container that embodies the designs claimed in the U.S. Patent No. D538,114 or U.S. Patent No. D592,463.
>
> (2) Defendant Bradshaw, its officers, agents, servants, employees, representatives, attorneys, related companies, successors, assigns, and all others in active concert or participation with them are enjoined, pending the hearing and determination of this action, from marketing, selling, advertising or promoting the Bradshaw Food Keeper line of products, or any similar containers that are likely to be confused with any of the products in the Hutzler Food Saver line of products.
>
> (3) Defendant Bradshaw shall, within 60 days of the date of this Order, recall all Bradshaw Food Keeper products from each and every retail location in which any Bradshaw Food Keeper product is sold.

(July 26, 2012 Pltf. Ltr. & Proposed Order)

---

[1] Hutzler's motion did not explicitly address recall relief.  Hutzler sought an order "preliminarily enjoining defendant Bradshaw . . . from:  (1) infringing, or inducing infringement, of Hutzler's patents, and (2) unfairly competing with Hutzler's line of produce containers, specifically, from directly or indirectly making, using, selling or offering for sale any products embodying the inventions of the patents during their terms or the Food Saver Line, or without the express written authority of Hutzler."  (Dkt. No. 4)

On July 31, 2012, Bradshaw submitted objections to Hutzler's proposed order. (Dkt. No. 26)  Hutzler filed a reply in support of its proposed injunction on August 1, 2012. (Dkt. No. 27)

On August 3, 2012, this Court ruled that "[t]he scope of preliminary injunctive relief will be limited to Bradshaw's Onion Keeper and Garlic Keeper." (Dkt. No. 28 at 3)  The Court also ordered the parties to make supplemental submissions concerning the propriety of a recall order and the appropriate amount of a Rule 65(c) bond.  (Id. at 4)  The parties filed supplemental submissions as directed by the Court's order.  (Dkt. Nos. 41-45, 48-49, 52)[2]

## DISCUSSION

### I.  LEGAL STANDARD

"The imposition of a recall requirement is well within [a] district court's broad powers as a court of equity . . . ."  Perfect Fit Indus., Inc. v. Acme Quilting Co., Inc., 646 F.2d 800, 805 (2d Cir. 1981).  Nevertheless, a recall is considered an "extreme remedy," Conopco Inc. v. 3DO Co., No. 99 Civ. 10893 (JSM), 1999 WL 1277957, at *3 (S.D.N.Y. Dec. 7, 1999), and, accordingly, "[r]ecall orders are granted sparingly, and usually when there has been egregious conduct by the defendant or when motivated by additional public policy considerations."  NBA Props. v. Untertainment Records LLC, No. 99 Civ. 2933 (HB), 1999 WL 335147, at *11 (S.D.N.Y. May 26, 1999) (citing Perfect Fit, 646 F.2d at 805 ("The recall provision is an unusual, and perhaps unprecedented, remedy for a violation of New York's law of unfair competition.")); see also Kompan A.S. v. Park Structures, Inc., 890 F. Supp. 1167, 1183 (N.D.N.Y. 1995) ("Recall is a drastic remedy . . . ."); Sanofi-Synthelabo v. Apotex Inc., 488 F.

---

[2] Bradshaw has moved for leave to file a response to Hutzler's supplemental briefing.  (Dkt. No. 48)  That motion will be granted.  Consideration of Bradshaw's submission is appropriate given Hutzler's claims that Bradshaw has continued "selling its infringing Onion and Garlic Keepers."  (See G. Ehrenhaus Decl. (Dkt. No. 45) ¶¶ 4, 6)

Supp. 2d 317, 349 (S.D.N.Y. 2006) (a recall is an "unusual remedy"); Novo Nordisk of N. Am., Inc. v. Eli Lilly and Co., No. 96 Civ. 5787(BSJ), 1996 WL 497018, at *8 (S.D.N.Y. Aug. 30, 1996) ("Recall is an extreme remedy . . . ."). In deciding whether to order a recall, a court should consider "the defendant's good faith or bad faith, the likelihood of diversion of customers from plaintiff to defendant, the extent of the burden entailed in a recall[,] including the breadth of distribution and the shipping costs, and the probability that the plaintiff would benefit from such an order . . . ." Cherry River Music Co. v. Simitar Entm't, Inc., 38 F. Supp. 2d 310, 322 (S.D.N.Y. 1999) (citing Perfect Fit, 646 F.2d at 807).

The Second Circuit has emphasized that "a district court should carefully consider the likely burden and expense of a recall before it imposes the remedy." Perfect Fit, 646 F.2d at 807. A recall is inappropriate where "the imposition of a recall may be unduly onerous, as where the defendant's products are widely distributed and particularly expensive to ship," or where "the probable benefit to the plaintiff from a recall may not outweigh the burden to the defendant . . . even if that burden is relatively light." Id.; see also Merit Diamond Corp. v. Frederick Goldman, Inc., 376 F. Supp. 2d 517, 526 (S.D.N.Y. 2005) ("[T]o determine whether [a recall should be ordered], a court 'must consider the likely burden and expense of a recall to the defendant, and balance that burden against the benefit that would accrue to the plaintiff.'") (quoting Benham Jewelry Corp. v. Aron Basha Corp., No. 97 Civ. 3841 (RWS), 1997 WL 639037, at *19 (S.D.N.Y. Oct. 14, 1997) (citing Perfect Fit, 646 F.2d at 807)).

Because courts in this Circuit regard recall orders as mandatory injunctions,[3] see Sanofi-Synthelabo, 488 F. Supp. 2d at 349 (characterizing recall order as a mandatory injunction); Berlent v. Focus Features, LLC, No. 06 Civ. 2834 (SCR), 2006 WL 1594478, at *2

---

[3] Hutzler acknowledges in its supplemental briefing that "a recall is a form of mandatory injunctive relief . . . ." (Pltf. Recall Br. (Dkt. No. 43) at 2)

4

(S.D.N.Y. June 8, 2006) (same), this Court must also consider Second Circuit case law indicating that a "heightened standard applies to mandatory injunctions, that is, injunctions that disturb the status quo by ordering affirmative relief, as opposed to prohibitory injunctions which preserve the status quo."[4] Eng v. Smith, 849 F.2d 80, 82 (2d Cir. 1988); see also Tom Doherty Assocs., Inc. v. Saban Entm't, Inc., 60 F.3d 27, 33-34 (2d Cir. 1995) ("[W]e have required the movant to meet a higher standard where: (i) an injunction will alter, rather than maintain, the status quo, or (ii) an injunction will provide the movant with substantially all the relief sought and that relief cannot be undone even if the defendant prevails at a trial on the merits.").

"[A] mandatory injunction should issue 'only upon a clear showing that the moving party is entitled to the relief requested, or where extreme or very serious damage will result from a denial of preliminary relief.'" Tom Doherty Assocs., 60 F.3d at 34 (quoting Abdul Wali v. Coughlin, 754 F.2d 1015, 1025 (2d Cir. 1985)). "The 'clear' or 'substantial' showing requirement . . . thus alters the traditional formula by requiring that the movant demonstrate a greater likelihood of success." Id. (citing SEC v. Unifund SAL, 910 F.2d 1028, 1039 (2d Cir. 1990)); see also Verzani v. Costco Wholesale Corp., 641 F. Supp. 2d 291, 302 (S.D.N.Y. 2009) ("Where, as here, plaintiff seeks a mandatory injunction, requiring defendant to take affirmative action rather than merely preserve the status quo, a heightened standard requires a 'clear or substantial showing of a likelihood of success on the merits.'") (quoting Almontaser v. New York Dep't of Educ., 519 F.3d 505, 508 (2d Cir. 2008)).

---

[4] Second Circuit law determines the propriety of a recall order. See Oral Research Labs., Inc. v. L. Perrigo Co., No. 88-1567, 1988 WL 123501, at *1 (Fed. Cir. 1988) (summary order) ("This court applies the law of the appropriate circuit to issues over which it normally possesses no jurisdiction, in other words, to 'all but the substantive law fields assigned exclusively to this court.' Accordingly, the law of the Third Circuit applies to our review of the district court's decision to include a recall order within the scope of its preliminary injunction.") (citation omitted).

## II.     A RECALL ORDER IS NOT APPROPRIATE

Bradshaw argues that a recall order is not appropriate here because: (1) there is "no evidence of the type of willful, intentional copying and infringement required to order a recall under the heightened standard which applies at the preliminary injunction stage," (2) "the balance of the burdens and benefits of recall as required by the Perfect Fit analysis, including efficacy of a proposed recall order, militates against recall," (3) "the heightened standard of evidentiary proof, requiring 'substantial likelihood' and 'very clear' evidence . . . is not met by Hutzler," and (4) "[n]o evidence whatsoever exists [that] Bradshaw's Onion Keeper and Garlic Keeper products pose a possible harm to the public." (Def. Recall Br.[5] 1-2) Bradshaw has offered evidence that a recall would cost Bradshaw $102,986, and would cost its retailer customers an additional $112,385. (Aug. 10, 2012 Megorden Aff. ¶¶ 48, 53)

Hutzler argues, however, that it "has made a clear showing that the balancing of the hardships favors Hutzler," noting that "[i]f Bradshaw's products are not recalled immediately . . . . [Hutzler] will lose a critical last opportunity to reclaim the market share it lost to Bradshaw over the past year, while the parties were actively litigating the preliminary injunction," "will not be eligible to place its products in stores until another year passes and a new Planogram phase is entered,"[6] and "will be squeezed out of the opportunity to participate in both Back to School and Christmas sales periods, which are essential to Hutzler's business." (Pltf. Recall Br. at 7-9, 16)

---

[5] "Def. Recall Br." refers to Bradshaw's August 10, 2012 Supplemental Briefing on Recall and Bonding. (Dkt. No. 41) "Pltf. Recall Br." refers to Hutzler's August 17, 2012 Reply to Bradshaw International, Inc.'s Supplemental Briefing on Recall and Bonding. (Dkt. No. 43) "Def. Supp. Recall Br." refers to the August 23, 2012 Response of Bradshaw International, Inc. to Supplemental Briefing by Hutzler Manufacturing Company, Inc. on Recall and Bonding. (Dkt. No. 48-1)

[6] "Planogram" is a system used by retail stores to allocate space. "In executing a Planogram, stores design and map out what products will be placed in what locations in the store, and how

The Court concludes that Hutzler has not demonstrated that the benefit it would realize from a recall outweighs the burden and expense of a recall on Bradshaw. First, the cost of a recall is considerable. As noted above, a recall would cost Bradshaw $102,986, and would cost its retailer customers an additional $112,385. (Aug. 10, 2012 Megorden Aff. ¶¶ 48, 53) Given that the products to be recalled have a cost value of only $122,360 (id. ¶ 54), the expense of a recall is significant. Moreover, courts have declined to issue recall orders where a recall "may cause substantial harm to innocent third-party customers of defendant[ ]." Merton Co. Ltd. v. Tony Trading of Hong Kong, Ltd., No. 87 Civ. 5068(PNL), 1987 WL 28841, at *3 (S.D.N.Y. Dec. 16, 1987).

Courts have also considered "disruption of the marketplace" in denying recall orders. See id. A recall here would cause significant disruption in the marketplace, given that the products at issue are maintained at 12,384 retail locations. (Aug. 10, 2012 Megorden Aff. ¶ 40) Bradshaw has also submitted evidence suggesting that even if the Court were to order a recall, retailer compliance would be uncertain, given that the products to be recalled are neither defective nor dangerous. (Id.)

Hutzler argues that Bradshaw has exaggerated the burden of a recall, noting that companies such as "Rapid Recall Exchange" "help[] retailers, wholesalers, and suppliers manage product recalls and market displays." (Pltf. Recall Br. 15; R. Ehrenhaus Decl. (Dkt. No. 44) ¶¶ 3-8) Bradshaw explains, however, that Rapid Recall Exchange "is merely a communication tool for alerting retailers about a recall . . . . It relieves some administrative communication burden. It does nothing to assist in the collection of the items, shipment of the items, re-stickering of the store shelves, etc." (Def. Supp. Recall Br. 7-8; Aug. 22, 2012 Megorden Supp. Aff. ¶ 7)

---

much of a product the store needs to buy to fulfill its needs in the next seasonal sales period."
(R. Ehrenhaus Decl. (Dkt. No. 44) ¶ 14)

7

While Bradshaw has offered concrete evidence of the burden associated with a recall, Hutzler has not offered convincing evidence that it would benefit from a recall. There is, for example, no hard evidence that Hutzler's products would replace recalled Bradshaw products. It is also not clear that retailers change the Planograms in early fall as Hutzler asserts. Bradshaw has offered evidence that most retailers do not change their Planograms in the fall because "from mid-September through early-January[,] the stores' labor is concerned with Halloween, Thanksgiving, and Christmas[,] and [the stores] don't want to dilute the labor resources, physically disrupt the stores for a planogram reset or risk losing sales because of a disrupted planogram." (Aug. 22, 2012 Megorden Supp. Aff. ¶ 9)

In sum, because Hutzler has not demonstrated that the benefit it would receive from a recall would exceed the cost and burden to Bradshaw and Bradshaw's retailer customers of a recall, a recall order is not appropriate. See City Merchandise, Inc. v. Broadway Gifts Inc., No. 08 Civ. 9075 (RJS), 2009 WL 195941, at *3 (S.D.N.Y. Jan. 27, 2009) (denying recall order where there was " insufficient evidence for [the court] to conclude that the burden and expense of a recall to Defendants is outweighed by the benefit that would accrue to Plaintiff").

## III.     BOND AMOUNT

Rule 65(c) provides that "[t]he court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). "'Rule 65(c) gives the district court wide discretion to set the amount of a bond. . . .'" Corning Inc. v. PicVue Elecs., Ltd., 365 F.3d 156, 158 (2d Cir. 2004) (quoting Doctor's Assocs., Inc. v. Distajo, 107 F.3d 126, 136 (2d Cir. 1997)). "'[T]he burden is on the party seeking security to establish a rational basis for the

amount of the proposed bond.'" AB Electrolux v. Bermil Indus. Corp., 481 F. Supp. 2d 325, 337 (S.D.N.Y. 2007) (quoting Int'l Equity Invs., Inc. v. Opportunity Equity Partners Ltd., 441 F. Supp. 2d 552, 556 (S.D.N.Y. 2006)).

The Second Circuit has noted that,

> "[s]ince a preliminary injunction may be granted on a mere probability of success on the merits, generally the moving party must demonstrate confidence in his legal position by posting bond in an amount sufficient to protect his adversary from loss in the event that future proceedings prove that the injunction issued wrongfully."

Nokia Corp. v. InterDigital, Inc., 645 F.3d 553, 557 (2d Cir. 2011) (quoting Edgar v. MITE Corp., 457 U.S. 624, 649 (1982)). A bond

> serves a number of functions. It assures the enjoined party that it may readily collect damages from the funds posted in the event that it was wrongfully enjoined, and that it may do so without further litigation and without regard to the possible insolvency of the plaintiff. In addition, the bond provides the plaintiff with notice of the maximum extent of its potential liability.

Id. (citations omitted).

Bradshaw has offered evidence that it earned net profits of $163,949 on sales of the Onion Keeper and Garlic Keeper over the past 12 months. (Aug. 10, 2012 Megorden Aff. ¶ 55) Absent the injunction, Bradshaw would expect approximately the same level of sales and profit over the next 12 months. (Id. ¶¶ 56-57) Accordingly, Bradshaw anticipates lost profit damages of $163,949 per year due to the entry of a preliminary injunction. (Def. Recall Br. 23) Potential lost profits may be considered in determining the bond amount. See, e.g., Sanofi-Synthelabo v. Apotex, Inc., 470 F.3d 1368, 1385 (Fed. Cir. 2006) ("The [district] court based its determination [of the amount of the bond] on evidence presented before the court that concerned [defendant's] 'potential lost profits, lost market share and associated costs of relaunch' in the event of wrongful enjoinment. We find no basis for disturbing the court's assessment of the

facts, and thus conclude that the court did not abuse its discretion in setting the bond amount."); Johnson Controls, Inc. v. APT Critical Sys., Inc., 323 F. Supp. 2d 525, 542 (S.D.N.Y. 2004) (setting bond amount based on defendant's potential lost profits).

In addition, Bradshaw has offered evidence that it currently holds 898 "pallet locations" of Onion Keepers and Garlic Keepers in its warehouse,[7] and that the cost of storing this inventory is $53,880 per year. (Megorden Aff. ¶¶ 58-59; Def. Recall Br. 23-24) Accordingly, absent a recall order, Bradshaw expects damages in the amount of $217,829 per year. (Def. Recall Br. 24) Bradshaw further "[a]ssum[es] a two-year window pending final resolution of this matter," and accordingly requests that Hutzler be ordered to post a bond in the amount of $435,658.[8]

Hutzler argues that a bond of no more than $175,000 is reasonable. (Pltf. Recall Br. 19-21) Hutzler accepts Bradshaw's net profits figure (id. at 21), but contends that (1) the litigation can be completed in a year; and (2) Bradshaw's projected storage costs are "artificially inflated" and "not in accord with industry standards." (Id. at 19-20) Hutzler notes that "[m]anufacturers, importers, or distributors, including Hutzler, typically carry around 4-8 weeks of inventory" for products such as those at issue here, and that the 898 pallets of product Bradshaw claims that it is currently storing is a much higher inventory than is standard in the industry. (Id. at 19; R. Ehrenhaus Decl. ¶¶ 10-11) Hutzler asks that the portion of the bond reflecting Bradshaw's storage costs be set at $10,776 per year, which it claims "is the amount it would cost to store an industry standard amount of inventory." (Pltf. Recall Br. 20) Bradshaw has not addressed the amount of product in its inventory.

---

[7] The term "pallet locations" is not explained.
[8] In its briefing, Bradshaw requests that Hutzler be required to post a bond in the amount of $538,644 (Def. Recall Br. 24), but that number includes the estimated cost of a recall.

The Court believes that this litigation can be completed within eighteen months. The Court will accept Bradshaw's net profit figure of $163,949 per year, but concludes that Bradshaw's storage costs are inflated. The Court will provide for a bond of $275,923, composed of $245,923 in potential lost profits and $30,000 in storage expenses.

## CONCLUSION

For the reasons set forth above, Bradshaw's motion for leave to file a response to Hutzler's supplemental briefing (Dkt. No. 48) is granted. Hutzler's application for an order requiring a recall is denied. Upon notice that Plaintiff has posted a Rule 65(c) bond in the amount of $275,923, Defendant Bradshaw, its officers, agents, servants, employees, representatives, attorneys, related companies, successors, assigns, and all others in active concert or participation with them are enjoined, pending the hearing and determination of this action, from:

(1) making, using, offering for sale, selling, importing, or distributing the Bradshaw Onion Keeper or the Bradshaw Garlic Keeper, or any other container that embodies the designs claimed in U.S. Patent No. D538,114 or U.S. Patent No. D592,463; and

(2) marketing, selling, advertising or promoting the Bradshaw Onion Keeper or the Bradshaw Garlic Keeper, or any other container that embodies the designs claimed in U.S. Patent No. D538,114 or U.S. Patent No. D592,463, or any container that is likely to be confused with the Hutzler Onion Saver or the Hutzler Garlic Saver.

The Clerk of Court is directed to terminate the motion. (Dkt. No. 48)

Dated: New York, New York
March 28, 2013

SO ORDERED.

_____
Paul G. Gardephe
United States District Judge